**In the Interest of L.S., N.S. and A.S., Minor Children.**

**L.H., Mother, G.S., Father, O.H., Maternal Grandmother, Appellants,**

**State of Iowa and L.S., N.S., and A.S., Minor Children, Appellees.**

**No. 91–477.**

Supreme Court of Iowa.

April 15, 1992.

Paul W. Demro of Clark, Butler, Walsh & McGivern, Waterloo, for appellant maternal grandmother.

Sara Kersenbrock, Waterloo, guardian ad litem for appellee children.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Special Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee State of Iowa.

Craig Ament, Cedar Falls, for appellant father.

Carter Stevens of Beecher, Rathert, Roberts, Field, Fister, Walker & Morris, Waterloo, for appellant mother.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and SNELL, JJ.

SNELL, Justice.

This case concerns another difficult problem involving termination of parental rights and deciding what is in the best interests of their children. Three children are affected; L.S. is a boy, age nine, N.S. is a girl, age eight, and A.S. is a girl, age six. The juvenile court determined that parental rights should be terminated and ordered custody of the three children placed with the Iowa Department of Human Services for suitable adoption placement. On appeal, the Iowa Court of Appeals reversed and remanded the case for placement in permanent foster care with O.H., the maternal grandmother. We have considered the case on further review and now vacate the decision of the court of appeals, affirm the judgment of the district court and remand for appropriate orders.

Our review of this case is de novo. We review the facts as well as the law and adjudicate the parents' rights anew. *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). However, weight is accorded the findings of the juvenile court, particularly as to the credibility of witnesses. *Id.*

As too often happens, the status of these children has been uncertain for years. On December 8, 1986, they were adjudged children in need of assistance as defined by Iowa Code section 232.2(6)(b) and (c)(2) (1985). Their parents retained custody through review hearings on February 12, 1987, October 2, 1987, and May 3, 1988. After a review hearing on August 5, 1988, at which their mother was absent, the court ordered custody to remain with their father. That arrangement was ended on September 30, 1988, by a court order removing and placing them in foster care under the supervision of the Iowa Department of Human Services. Foster care placement has continued since then.

On May 19, 1990, a petition for termination of parental rights was filed. A review hearing was held June 15, 1990. On July 16, 1990, O.H., the maternal grandmother, intervened, asking for custody of the three children. The juvenile court heard evidence on August 13, September 6, October 10, October 15, and December 19, 1990. The order terminating parental rights was filed on March 1, 1991; the court of appeals reversed and remanded the case on October 29, 1991.

The parties from the beginning and now argue two different cases. The State presents the case for termination of the parental rights of G.S. and L.H. G.S. and L.H., on the other hand, concentrate their argument not so much on whether the State has proved the elements supporting a termination, but whether custody should be placed in the maternal grandmother. Much of this difference stems from a conflicting sociological emphasis by the parties.

The juvenile court found that the children were living in unsanitary conditions

and both parents were abusing alcohol to the point they could no longer adequately supervise the children. The family home was dirty and smelled of urine. L.H., the mother, left the family home in June 1988. After L.H.'s absence the children's day care provider reported that they arrived at the center hungry, wearing dirty clothes, and were inadequately dressed for the weather conditions. G.S., the father, continued to abuse alcohol, passing out on one occasion at the elementary school from extreme intoxication. A DHS investigator found him unconscious from intoxication at his home with the children present, and no other adult to care for them. After the children were removed from the home, it was discovered that they had been sexually abused by both their father and mother. G.S. had oral, anal and vaginal sex with the children, sometimes in the presence of their mother. The mother, L.H., sexually abused the children by inappropriately fondling them and failing to protect them from G.S. L.H. and G.S. were later divorced, and G.S. married D.S.

During the time the children remained in the family home under the protective custody of DHS, various services were provided. The children attended protective day care five days per week, and homemaker services were offered on a weekly basis. Services by the public health nurse were provided at a minimum of two times a month. The court ordered that the parents participate in psychiatric counseling substance abuse evaluation and counseling at the Northeast Council on Substance Abuse. Family therapy with the Orchardale Family Support Team was offered. The parents resisted participation in the services ordered by the court, denied the charges of sexual abuse and requested a dismissal on three occasions of the child in need of assistance petition.

Since being removed from the home, the children have been in numerous foster homes. Since September 30, 1988, L.S. has been in four foster homes, N.S. in five, and A.S. in three. A contributing factor to these moves has been the negative behavior exhibited by the children. During February 1989, the three children were referred to the Cedarloo Psychiatric Clinic for counseling in distinguishing between appropriate and inappropriate sexual behavior. All three children have exhibited inappropriate sexual behavior. Both of the girls have a short attention span. A.S. has been diagnosed as having an attention deficit disorder with hyperactivity, which is currently being treated through medication.

The DHS adoption unit has done a staffing regarding the three children. It determined that the children are adoptable.

Both parents argue that their rights should not be terminated and placement of the children with their maternal grandmother, O.H., should be done. They fault DHS for failing to involve O.H. with her grandchildren when considering placement and ask the court to compensate for DHS's failure.

The maternal grandmother of the three children, O.H., was born in Mississippi in 1936, one of fifteen children. She attended school in Mississippi until the eighth grade. When O.H. was seventeen years old, she married T.H. They lived in Mississippi until 1959 and then moved to Waterloo. The couple had three children including L.H., the mother in this case. The marriage of O.H. and T.H. degenerated resulting in a divorce in 1968. T.H. also lives in Waterloo and visits regularly.

O.H. has never been employed outside of the home. During the last twenty-three years, aid to dependent children benefits has been her sole source of income. O.H.'s fourth child, C.H., was born after the 1968 divorce from T.H., who is not the father of C.H.

All three of O.H.'s daughters had teenage pregnancies that interrupted their formal high school education. O.H. does not think that there is anything that she could have done differently as a parent to supervise her two oldest daughters that would have helped them to stay in school and complete their education.

C.H., the fourth child of O.H., was in the eleventh grade when her child was born on September 24, 1990. As of the December

1990 hearing, C.H. had not started back to school because she wanted to spend more time with the baby. O.H. was not acquainted with the EXPO program for mothers with children, which provides a nursery at the school.

In addition to C.H. and C.H.'s baby, D.H., a nine-year-old child, resides with O.H. D.H. is the son of L.H. and the half sibling of the three children concerned in this case. D.H. has resided with O.H. since infancy. D.H. has had problems in school and has been enrolled in a special class.

In 1987, O.H.'s father suffered an incapacitating stroke. At that time, he moved from Mississippi to Waterloo to reside with O.H. in her home. He remained there until his death in February 1990, being cared for entirely by O.H.

G.S. and L.H. asked O.H. to get involved with the termination action in the juvenile court. During June 1990, O.H. informed DHS that she wanted the children to come to live with her. Although seeking custody of the three children in the present case, O.H. has not attempted to obtain legal custody of D.H., who currently lives with her and is a child of L.H.

O.H. knows that the children have been sexually abused. G.S. told O.H. that it was not true that he had sexually abused the children. O.H. wants to believe G.S., but states that she also believes what the small children say. G.S., the father, visits O.H.'s house once or twice a month and brings his new wife with him for the visits.

A DHS worker did a home study of O.H. for the purpose of determining whether placement of the three children with O.H. would be appropriate. She concluded that placement of the three children with O.H. would not be in their best interests. The worker doubted whether O.H. could cope with the behavior that is common to sexual abuse victims. The worker also thought that O.H.'s age should be considered a factor because O.H. would be in her mid-sixties when the children would be struggling with the issues of adolescence. The worker did not believe that O.H. could provide the necessary consistency and structure to correct behavioral problems.

Appellants, L.H., G.S. and O.H., point out that the termination of parental rights is made a matter of judgment by statute. They correctly note that section 232.117(3) states that if the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence, the court *may* order parental rights terminated. Thus, they argue that with the availability of O.H., the children's grandmother, to be a custodian, the petition to terminate should be denied.

Much evidence has been presented showing that O.H. has coped with life's hardships, determined to do the best she could with limited training and meager resources. Her efforts are not denied by the record and are surely commendable. Her care for her father under extremely difficult circumstances demonstrates a love of family that is admirable. The court of appeals emphasized this in deciding that the best interests of the children lay in being raised by a loving and energetic grandmother. Recognizing that she would need support services from the State, the appeals court remanded for an order setting the level of support. The appeals court also abjured an analysis of the State's proof of the elements supporting a termination of parental rights, apparently fearing that the obligation of financial support from the parents would be cut off.

Our review of the juvenile court's judgment is de novo and does not proceed ab initio. We are required to follow the statutory mandates and the jurisprudence of our prior decisions on statutory interpretation. *Dameron*, 306 N.W.2d at 745. Iowa Code section 232.117(3)(c) (1991) allows a court to transfer guardianship and custody to a relative or other suitable person but only if parental rights are terminated. Section 232.117(4) provides that if a termination of parental rights is not ordered, the child may be adjudicated in need of assistance and custody transferred in accordance with section 232.102. Section 232.102 allows transfer of legal custody to a relative after a dispositional hearing involving a child in need of assistance, adjudicated as such under section 232.96. Transfer of the custo-

dy of a child for the purpose of "long-term care" is authorized under section 232.104 when a termination of the parent-child relationship would not be in the best interest of the child. *See* Iowa Code § 232.104(3)(a).

■ In the present case the juvenile court found that it was in the best interests of the children to terminate the child-parent relationship. Clear and convincing evidence was found to support the petition. The petition asked for termination of parental rights pursuant to sections 232.-116(1)(c)(1), (2); (d)(1–3); (e)(1–4); (k)(1–3); (h)(1), (2). *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990). We determined that the legislature has made a categorical determination that the needs of a child are promoted by termination of parental rights in cases meeting the conditions of section 232.-116(1)(e)(1), (2) and (3) (1989). We have also said: The child should not be forced to endlessly suffer the parentless limbo of foster care. *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). Termination must occur if enough time has passed and the parent still cannot take care of the child. *In re T.D.C.*, 336 N.W.2d 738 (Iowa 1983). After twelve months, the case must be viewed with a sense of urgency. *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987).

Our review of the record made before the juvenile court convinces us that the grounds alleged for termination of parental rights have been proved. It is in the children's best interests to remove them from the detrimental influence of their parents and provide a custodian who is free from the assertion by the parents of their legal rights. The fact that financial support, if any, by or through the parents is cut off is an inadequate reason to alter this result.

■ The alternative of placing the children's custody with their grandmother, O.H., was thoroughly considered by the juvenile court. That court noted that O.H. already has three children in her home for which she has significant responsibilities. The court found that the sibling relationship between the child in her home and the three children involved in this case has not been close. There was little contact between these three children and their grandmother even prior to their removal from their parents' custody in December 1988. The children have been physically neglected and sexually abused. The juvenile court found that they need a high degree of structure with love and nurturance. The attorney and guardian ad litem did not believe the grandmother could provide the care needed, opposed her application for custody and supported the termination petition. The juvenile court noted the active involvement by the guardian ad litem in the progress of this case and gave substantial weight to this recommendation. In its findings, the juvenile court stated: "Although adoption can never be guaranteed, placing the children at this time in long-term foster care or in the home of O.H. would surely leave them in a parentless limbo with little probability of permanence."

Because on our de novo review of the record, our conclusions accord with those of the juvenile court, we vacate the decision of the court of appeals and affirm the judgment of the juvenile court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.