**In the Interest of J.P. and E.S., Minor Children,**

**M.P., Mother, Appellant.**

**No. 92–1328.**

Court of Appeals of Iowa.

Feb. 23, 1993.

---

John M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee State.

Edward Leff of Wilson, Matias, Usher & Leff, Cedar Rapids, attorney and guardian at litem for minor children.

Fae Hoover–Grinde, Cedar Rapids, for S.P., father of J.P.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Judge.

M.P. is the mother of four children: R.T., a daughter born on January 26, 1975; T.W., a daughter born on June 14, 1976; E.S., a son born on July 24, 1985; and J.P., a daughter born on September 25, 1986. Each child has a different father. Only E.S. and J.P. are involved in this appeal. The juvenile court placed T.W. in long-term foster care and discharged R.T. from its jurisdiction due to a failure to cooperate.

On July 12, 1989, the State filed a child in need of assistance (CHINA) petition with respect to all four children. The petition referenced an affidavit of a social worker from the Department of Human Services (DHS). The affidavit stated there had been a founded denial of critical care report filed against the mother. The report was based on injuries J.P. had sustained on her back and legs. The affidavit also noted a live-in boyfriend of M.P. had a record of founded physical abuse reports from the State of Vermont.

On August 8, 1989, the court adjudicated the children to be in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) (1989). The juvenile court order provided the children were to remain with their mother and DHS was to provide protective supervision of the placements. Following a dispositional hearing on September 21, 1989, the children remained in the custody of their mother. R.T., however, was placed in the custody of her maternal grandmother. The juvenile court ordered DHS to continue providing protective supervision of the placements. In December of 1989 and January of 1990, DHS filed abuse reports against M.P. based on her lack of supervision. The reports cited M.P. with a denial of critical care of J.P. The reports found J.P. sustained burns on two occasions and failed to receive timely and proper medical care for a double ear infection on another occasion.

On January 22, 1990, an application for modification of prior dispositional orders was filed. A hearing was held on the application on February 6, 1990. On February 8, 1990, the juvenile court ordered the children be placed in foster care. The mother agreed foster care was the least restrictive placement.

Progress reports filed by DHS indicated the children were doing well in foster care. Social workers reported the mother made little progress with her case plan. They reported home visits between M.P. and her children caused the children to regress in behavior.

On November 21, 1991, the State filed a petition for termination of the parental rights of the mother and fathers of J.P. and E.S. After a hearing on the matter, the juvenile court terminated the parental rights of the mother, M.P., as to J.P. and E.S. pursuant to Iowa Code section 232.116(1)(e). In its findings of fact, the court cited the court-ordered examinations of psychologist Karen Pirnot. Dr. Pirnot concluded M.P. lacked the understanding to meet the basic needs of her children and it was unlikely M.P. could maintain herself independently. The doctor also concluded M.P. does not appear to possess the capacity or motivation necessary to learn how to care for her children. Dr. Pirnot supported

the termination of the mother's parental rights. The juvenile court also heard testimony from other individuals involved in administering services to M.P. and her family. Such witnesses included Barbara Garlinghouse, a social worker for Lutheran Social Services, Julie Simpson, a protective homemaker with the Linn County Home Health Services, and Aletha Panek, a protective service worker for Iowa DHS in Linn County. Garlinghouse and Panek both supported the termination of M.P.'s parental rights. Simpson opined M.P. lacked the ability to adequately parent her children.

The court also terminated the parental rights of both fathers. Only the mother appeals.

Our review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses; however, we are not bound by those determinations. *Id.* 349 N.W.2d at 491–92.

Our primary concern in termination proceedings is the best interests of the children. *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981); Iowa R.App.P. 14(f)(15). In determining the children's best interests, we consider the children's long-range as well as immediate interests. *Dameron,* 306 N.W.2d at 745; *In re R.M.,* 431 N.W.2d 196, 199 (Iowa App.1988). We also look to the parent's past performance because it may indicate the quality of care the parent is capable of providing in the future. *In re L.L.,* 459 N.W.2d 489, 494 (Iowa 1990).

On appeal M.P. argues termination of her parental rights is not the least restrictive alternative available to the juvenile court and was not in the best interests of her children. M.P. contends the juvenile court should have ordered long-term foster care because it is the least restrictive alternative. In addition M.P. argues termination of her rights pursuant to chapter 232 violates her due process rights. M.P. contends if the court terminates her parental rights, she should still be permitted to continue visiting and communicating with her children.

I. The juvenile court terminated M.P.'s parental rights pursuant to Iowa Code section 232.116(1)(e). The section provides the juvenile court may terminate parental rights if (1) the child involved is at least four years old, (2) the child has been adjudicated in need of assistance pursuant to section 232.96, (3) custody of the child has been transferred from the child's parents for at least twelve of the last eighteen months, and (4) clear and convincing evidence supports a finding the child cannot be returned to the custody of the parent at the present time. Iowa Code § 232.-116(1)(e) (1991). We review the facts to determine if the requirements of section 232.116(1)(e) have been met. At the time of the termination hearing, the children were five and six years old. Both children had been adjudicated in need of assistance. Section 232.116(1)(e)(3) is also satisfied because E.S. and J.P. were removed from the custody of M.P. on February 8, 1990, and had been in foster care for one and one-half years at the time of termination. Our courts have recognized after the twelve-month period has elapsed, the case must be viewed with a sense of urgency. *In re L.S.,* 483 N.W.2d 836, 840 (Iowa 1992) (citing *In re A.C.,* 415 N.W.2d 609, 614 (Iowa 1987)). We have determined three of the four subsections of 232.116(1)(e) have been met. We now address whether clear and convincing evidence supported the termination of M.P.'s parental rights.

Unfortunately, M.P. has a mental disability. Dr. Pirnot testified M.P. functions in the mild range of mental retardation. Mental disability, standing alone, is not a sufficient reason for the termination of the parent-child relationship, but it is a contributing factor to the inability to perform the duties of a parent. *In re J.W.D.,* 456 N.W.2d 214, 218 (Iowa 1990) (citing *In re Wardle,* 207 N.W.2d 554, 563 (Iowa 1973)). In *In re A.M.S.,* the Iowa Supreme Court held termination was appropriate

when the disabled parent lacks the capacity to meet a child's present needs as well as the capacity to adapt to a child's future needs. *In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988) (citing *Wardle*, 207 N.W.2d at 563). Evidence shows M.P. lacks the ability to assume total responsibility for parenting E.S. and J.P. and to adapt to their future needs. Dr. Pirnot testified M.P.'s overall adaptive functioning fell in the low adaptive range, which is a category within which less then two percent of individuals fall. The doctor concluded it is unlikely M.P. is capable of functioning or maintaining herself independently.

M.P. has often put her own needs above those of her children or failed to recognize the needs of her children. M.P. has been married four times. Three of the marriages were to the fathers of T.W., E.S., and J.P. M.P. has also permitted a number of adult males into her home. She has a history of short-term abusive relationships with men and continued to have relationships with men of whom she knew little of their background. M.P. also admitted there had been incidents of domestic violence and child abuse over the years. There have been three abuse reports filed against M.P. on the basis of denial of critical care to J.P. M.P. has failed to provide a safe and stable home for her children.

Evidence tends to show a lack of bonding between M.P. and her children. Dr. Pirnot testified there did not appear to be a strong bond between M.P. and the children. Garlinghouse, a social worker for Lutheran Social Services, reported the children refused to call M.P. "mom" outside of their home. Garlinghouse also reported J.P. claimed to have ignored her mother when she saw her on the street rather than acknowledging her.

The mother's interaction and lack of understanding for the needs of her children reinforces the juvenile court's decision to terminate M.P.'s parental rights. M.P.'s conduct during visitations was often inappropriate. M.P. criticized the children rather than making positive comments, she tended to mislead them about when they would be returning home, and she tried to make them feel guilty about being in foster care. Social workers reported M.P.'s interaction with her children during the visitations was minimal and they had to continually remind her to pay attention to all of the children and coax her to join the children on the floor to play or talk with them. Although one social worker testified M.P.'s interaction skills appeared to improve over the one and one-half years of supervised visitation, workers still had to remind her of simple tasks and responsibilities. Witnesses testified they kept trying to teach M.P. proper parenting skills, but she lacked consistency in performing the skills. For example, homemakers explained to M.P. that she needed to provide a nutritional snack for the children when they came for home visits. They gave M.P. examples of nutritional snacks she could provide. M.P., however, would often fail to provide such a snack even though she had received much coaching on this parenting skill.

DHS must make reasonable efforts to reunify the family and provide services. The record shows DHS established a case plan for M.P. and her family, identified problems within the family unit, and provided extensive services to M.P. As early as June 1989, services were being offered to M.P. and her family. In May of 1989, Mercy Homemakers began offering services on homemaking, money management, and meal preparation. In July of 1989, Families, Incorporated began providing family counseling on parenting issues, crises management, and relationships. In an affidavit from DHS dated November 12, 1991, the following services were listed as being offered to M.P. and her family in an attempt to reunify them.

Family Centered Services (05–05–89 to 07–07–89); Parent Skill Development–DHS (05–05–89 to 07–07–89); Homemaker Services (05–17–89 to 11–09–89); Families, Inc. Family Centered Services (07–07–89 to 11–09–89); Protective Day Care Four Oaks (09–25–89 to 04–30–90); Families Inc. Family Preservation (11–09–89 to 12–22–89); Linn County Day Care (05–01–90 to Present); Homemaker Services (10–90 to Present); Lutheran Social Ser-

vices Foster Care Services (02–07–90 to Present).

Garlinghouse testified M.P. had only attended eight of sixteen offered parenting classes. M.P. also participated in the Linn County Nurturing Program but failed to complete the program. Families Incorporated ended services to M.P. in December of 1989 because its services are time limited. The organization reported M.P. had failed to make progress during the period in which it provided services.

DHS has provided M.P. with services and given her time to develop parenting skills. M.P., however, has made little progress in meeting the goals of the case plan. A parent's past performance may be indicative of the quality of future care the parent is capable of providing. *In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). M.P.'s lack of progress raised serious concerns about her ability to meet the needs of her children in the future. Given M.P.'s past performance, we doubt additional time or services will be of benefit to her. After a thorough review of the record, we conclude the requirements of Iowa Code section 232.116(1)(e) have been met.

M.P. argues termination of her parental rights was not the least restrictive alternative available to the juvenile court. The Iowa Supreme Court has stated "the legislature has made a categorical determination the needs of a child are promoted by termination of parental rights in cases meeting the conditions of section 232.-116(1)(e)." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (citing *In re Dameron*, 306 N.W.2d 743, 744–45 (Iowa 1981)). We find the requirements of section 232.116(1)(e) have been met. The needs of E.S. and J.P. are promoted by the termination of M.P.'s parental rights.

■ The purpose of section 232.-116(1)(e) is to prevent children from being perpetually kept in foster care and to see that some type of permanent situation is provided for the children. Iowa Code section 232.104(3)(a) provides long-term foster care may only be considered if a termination of parental rights would not be in the child's best interests. Iowa Code § 232.104(3)(a) (1991); *see In re L.S.*, 483 N.W.2d 836, 840 (Iowa 1992). Long-term foster care is not an appropriate solution for the children. Several witnesses testified they believed both children were adoptable.

■ A child should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990); *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). The Iowa Supreme Court has stated several times " 'we cannot gamble with the children's future. They must not be made to await their mother's maturity.' " *In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986) (quoting *In re Kester*, 228 N.W.2d 107, 110–11 (Iowa 1975)). In *In re T.C.*, the Iowa Supreme Court chose to terminate appellant's parental rights rather than place the child in long-term foster care. *In re T.C.*, 492 N.W.2d 425 (Iowa 1992).

> Child custody should be quickly fixed and little disturbed. These children have been living in foster care for [one and one-half years]; the longer they remain in foster care the more difficult a suitable adoption becomes.
>
> Notwithstanding [M.P.'s] interests as mother, the best interests of the children dictate a severance of their mother's parental rights.

*In re D.W.*, 385 N.W.2d at 579 (quoting *In re Voeltz*, 271 N.W.2d 719, 724 (Iowa 1978)).

A continued relationship between the children and M.P. would only confuse the children and would result in more harm than good. The children's interests are paramount. The least restrictive alternative commensurate with the best interests of the children require termination of M.P.'s parental rights. We affirm the juvenile court.

II. In the alternative, M.P. argues if the court terminates her parental rights, then it should accord her due process by allowing her visitation and communication rights with her two youngest children.

■ The general scheme of our statutes regarding termination of parental

rights compels us to conclude the termination of one's parental rights causes the immediate cessation of any legal right the parent may have had to visitation. Iowa Code ch. 232 (1991); *see In re Ditter*, 212 Neb. 855, 326 N.W.2d 675, 676 (1982). To reach a different conclusion would appear to defeat the purpose of terminating parental rights.

Iowa Code section 232.2(52) defines termination of the parent-child relationship as "the divestment by the court of the parent's and the child's privileges, duties and powers with respect to each other." Iowa Code § 232.2(52) (1991); *see In re Adoption of Gardiner*, 287 N.W.2d 555, 558 (Iowa 1980). Iowa Code section 600A.2(4) defines the termination of parental rights as "a *complete severance and extinguishment* of a parent-child relationship between one or both living parents and the child." Iowa Code § 600A.2(4) (1991) (emphasis added). Our caselaw follows this premise as our courts refuse to allow children to continue in a parentless limbo and refuse to require children to await a parent's maturity. *See In re L.S.*, 483 N.W.2d 836, 840 (Iowa 1992); *In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986); *In re C.V.M.*, 478 N.W.2d 874, 877 (Iowa App.1991).

Public policy requires severing all family ties with respect to a child whose parents have had their parental rights terminated. 2 Am.Jur.2d *Adoption* § 85 (1962). In this case, no purpose exists, in promoting the best interests of a child, to delay the severing of all ties to a parent whose parental rights have been terminated.

Once a court determines the requirements are met to support termination, our legislature has chosen not to allow a parent to have enforceable rights. *In re L.S.* 483 N.W.2d 836, 840 (Iowa 1992); *In re M.W.*, 458 N.W.2d at 850 (citing *Dameron*, 306 N.W.2d at 744–45); *see* Iowa Code § 232.2(52) and 600A.2(4) (1991); *see also In re Robert J.*, 129 Cal.App.3d 894, 905–06, 181 Cal.Rptr. 188, 194 (1982). We find nothing unconstitutional in the legislature's choice.

We conclude M.P. has no enforceable right to visitation with her children once her parental rights are terminated. We hold it is in the best interests of E.S. and J.P. to terminate the parental rights of their mother. We affirm the juvenile court.

Costs of this appeal are taxed to the appellant.

**AFFIRMED.**