# IN THE COURT OF APPEALS OF IOWA

No. 14-0658
Filed July 16, 2014

**IN THE INTEREST OF J.C.,**
**Minor Child,**

**K.C., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Constance C. Cohen, Associate Juvenile Judge.

A mother appeals from the termination of her parental rights. **AFFIRMED.**

Amanda Demichelis of Demichelis Law Firm, P.C., Chariton, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie Brown, Assistant County Attorney, for appellee State.

Mike Bandstra, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

The mother appeals the termination of her parental rights to her fifth biological child, J.C., born in December 2012. She contends the State failed to prove two of the three statutory grounds for termination. She also contends termination was not in the child's best interests and that the exceptions found in Iowa Code section 232.116(3) (2013) apply in this case and should preclude termination of her parental rights. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Reviewing her claims de novo, *see id.*, we affirm.

### I. Analysis.

In determining whether parental rights should be terminated under chapter 232, the juvenile court "follows a three-step analysis." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *Id.* If the court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *Id.* at 706-07. Even if the court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

### A. Grounds for Termination.

The juvenile court terminated the mother's parental rights pursuant to the grounds set forth in Iowa Code section 232.116(1) paragraphs (d), (g), and (*l*). On our de novo review, we need only find termination proper under one of those

grounds to affirm. *Id.* at 707; *see also In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa Ct. App. 1995). Here, the mother only challenges the grounds found under paragraphs (d) and (*l*), thus waiving error as to the ground found under paragraph (g). *See Hyler v. Garner*, 548 N.W .2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the appellant for reversal on appeal"); Iowa R. App. P. 6.903(2)(g)(3) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue."). Therefore, we affirm the juvenile court's order terminating her parental rights under section 232.116(1) paragraph (g).

Nevertheless, even if we were to reach the general argument the mother makes, we would find that the district court was correct in terminating her parental rights under the unchallenged ground. Section 232.116(1) paragraph (g) authorizes termination if a court finds: (1) the child has been adjudicated in need of assistance, (2) the court has terminated parental rights to another child who is a member of the same family, (3) "[t]here is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation," and (4) an additional period of rehabilitation would not correct the situation. Our courts have long held that a parent's past performance "may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012).

Here, the mother is not a stranger to involvement with the Iowa Department of Human Services (Department). She has four older biological children to whom her parental rights were terminated as a result of her continued

drug abuse, her eldest child in 2000,[1] the next two eldest in 2007, and most recently, her fourth child in 2010. In each child's case, the mother has been offered substantial services to reunite her with her children. As noted by the juvenile court in its 2007 termination order:

> The [Department] has offered a plethora of services to this family designed to help reduce or eliminate the adjudicatory harms present in the home including substance abuse evaluations, substance abuse treatment, urine drug screens, in-home therapy, foster care, visitation, relative placement, and individual therapy as well as the oversight of [the Department] and the court for forty-six months in this case and two previous [child in need of assistance (CINA)] cases. Despite the offer and receipt of these services these parents are not in a position where they can have these children returned to their custody, and it is unlikely given their lengthy substance abuse histories that they will the and a place in the near future to resume the care and custody of their children. [The mother's second eldest child] has been removed from his parents three times, [the mother's third oldest child] twice. . . . This case is a prime example of the devastation that methamphetamine inflicts on families. The court has no doubt that these parents love and adore their children. However, the pull of methamphetamine has been so great as to lead the parents to neglect their parental duties and responsibilities and place them in a position where they are unable to meet the needs of their young children.

The mother was offered similar services in the case of her fourth child, even progressing to closing the CINA case regarding that child. However, she walked away from the child immediately after that case was closed, causing the CINA case to be re-opened and ultimately leading to the termination of her parental rights to that child.

The mother again came to the attention of the Department in December 2012, following the birth of J.C. The mother was incarcerated at that time, and a CINA case was initiated by the Department. After the mother was paroled in May

---

[1] The mother consented voluntarily to the termination of her parental rights to this child.

2013, she moved in with her husband and the child. She was again offered services for reunification, but by July 2013, the mother relapsed and was again using methamphetamine. The child was eventually placed in the care of the child's maternal grandfather.

The State filed its petition for termination of her parental rights in November 2013, and a hearing on the matter was held in January 2014. The mother admitted the child could not live in her physical care at the time of that hearing, or in the immediate future, due to the policy of her drug treatment program, but she asked for additional time for reunification because the child could be placed with her in a few months when a spot opened up for her at another treatment facility. She testified she hoped everything would be different this time around, and she believed there was no harm in granting her additional time due to the child's placement with the grandfather. However, she admitted that she had been through these treatment programs before, including her previous CINA case with her fourth child, where she successfully completed the program and progressed to closure of the CINA, only to relapse and require the case be re-opened, with the ultimate result being termination of her parental rights to that child.

Although we truly hope the mother is dedicated to seeing treatment through this time, her latest assurance that she is now interested in treatment is simply too little, too late for this child. She has had services off and on for fourteen years, and given the result in her 2010 case, the record clearly evidences the mother continues to lack the ability or willingness to respond to services that would correct the situation, and an additional period of rehabilitation

in this case would not correct the situation. We affirm the juvenile court's determination that termination of the mother's parental rights was proper under Iowa Code section 232.116(1) paragraph (g).

### B. Best Interests.

Furthermore, the record reveals that termination is in the child's best interests. "'It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.'" *A.B.*, 815 N.W.2d at 777 (citation omitted). "A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests." *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). Those best interests are to be determined by looking at the child's long-range as well as immediate interests. *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). We are to consider what the future likely holds for the child if the child is returned to the child's parent, *In re J.K.*, 495 N.W.2d 108, 110 (Iowa 1993), and the parent's past performance gives insight for the determination of a child's long-range best interests. *A.B.*, 815 N.W.2d at 777.

Here, given the mother's extensive history of substance abuse and relapse, along with the termination of her parental rights to her four other children, demonstrates this child could not be placed in the mother's care within a reasonable period of time. The evidence at the hearing established that the child is in need of permanency, and the child should not have to wait any longer. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). "At some point, the rights and needs of

the children rise above the rights and needs of the parents." *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997), *overruled on other ground by P.L.*, 778 N.W.2d at 39. A child should not be forced to endlessly suffer the parentless limbo of foster care. *See In re J.P.*, 499 N.W.2d 334, 339 (Iowa Ct. App. 1993). The child is doing well in the care of her grandfather and his wife, who "have demonstrated that they are ready, willing, and able to meet all of [the child's] needs for safety, permanency, and wellbeing," and the child deserves stability and permanency. Given the mother's history and previous involvement with the Department, as well as the child's need for permanency, we agree with the juvenile court that termination of the mother's parental rights was in the child's best interests as set forth under the factors in section 232.116(2).

### C. Potential Grounds Not to Terminate.

Finally, giving consideration to whether any exception in section 232.116(3) applies to make termination unnecessary, we agree with the juvenile court that none of the exceptions weigh heavily enough to reverse the termination. Although it is clear the mother loves her child, our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes the mother's inability to provide for the child's needs. *See D.W.*, 791 N.W.2d at 708. We agree with the juvenile court's assessment that although there is a bond and an attachment between the mother and child, and the permanency plans are for relative placement, the mother

> has significantly strained this relationship by the choices that she has made. These choices have resulted in at least six different placements in [this child's] young life. [The child] has spent many months of her short life outside of her mother's care because her mother was incarcerated. When [the mother] had the opportunity to

parent [the child] for approximately five months, she failed to meet [the child's] basic needs for safety and well-being. The bond and attachment with pre-adoptive family members is much stronger and healthier than [the mother's] bond.

We agree with the juvenile court that the child's best interests are served by severing her legal tie with the mother, and we therefore decline to invoke section 232.116(3).

## II. Conclusion.

Because we agree with the juvenile court the State proved the ground for termination, termination of the mother's parental rights was in the child's best interests, and none of the exceptions in section 232.116(3) weigh heavily enough to reverse the termination under the facts of this case, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**