**IN THE COURT OF APPEALS OF IOWA**

No. 21-1962
Filed March 30, 2022

**IN THE INTEREST OF J.E.,**
**Minor Child,**

**J.E., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Greene County, Joseph B. McCarville, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Jonathan Law, of Mumma & Pedersen, Jefferson, for appellant mother.

Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for appellee State.

Mark Rasmussen of Rasmussen Law Office, Jefferson, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**CHICCHELLY, Judge.**

This appeal involves the termination of a mother's parental rights to her infant child, J.E. The mother argues that the State did not sufficiently prove any of the four statutory grounds cited for termination. Because the State provided clear and convincing evidence to find that the mother and child could not be reunified at the time of the termination hearing, we affirm the juvenile court's termination of the mother's parental rights.

### I.      *Background Facts and Proceedings.*

The child in question is less than three years old and was removed from his mother's care in September 2020 due to domestic violence in the home, his mother's drug use and homelessness, and his special needs. The child has Down's syndrome, a history of congestive heart failure, and a feeding tube. In September 2020, J.E. and his mother were living in a home without electricity or running water, despite J.E. requiring oxygen 24/7 at that time. A local church later paid for a motel room, but J.E. was removed after police were called to the motel for a domestic disturbance. At that time, the responding officer reported cigarette smoke so thick in the mother's room that it made his breathing difficult. Given J.E.'s health condition, this placed him in serious medical jeopardy.

At the time of his removal, J.E. was 11 months old but developmentally presented as a newborn. His mother was not taking him to any necessary appointments or participating in any needed services that a child with special needs requires. He has made significant strides since being able to regularly attend medical appointments in foster care but still requires specialized daily medical care. Since his placement in foster care, J.E's mother has not taken

initiative to attend appointments or follow up on his progress and visit notes when she is absent. She has attended only two of more than twenty medical appointments.

During the pendency of this case, J.E.'s mother has been homeless and lived on and off with friends and her mother. She was unemployed and did not have a driver's license until shortly before the termination of parental rights hearing. She also does not have reliable transportation or a plan for daycare. Because she and her mother both smoke, placing J.E. in his grandmother's home is not an option. The Iowa Department of Human Services (DHS) has worked with the mother to find housing by attempting to facilitate inpatient treatment, which would offer temporary housing, and by making referrals to various housing agencies. She had received a housing voucher from one county, but she had not secured housing at the time of the termination hearing.

In June 2021, the mother requested that a no-contact order be dropped between her and the individual whose domestic abuse led to J.E.'s removal. The request was denied but demonstrates the mother's poor decision-making. She lost several teeth as a result of the domestic assault by this individual and has a history of substance use with him. She also asked a DHS worker about moving in with a woman whom she "didn't really know but was willing to let her move in" in the same town where this assailant was residing.

The juvenile court terminated the mother's parental rights pursuant to subsections (e), (g), (h), and (l) of Iowa Code section 232.116(1) (2021) in a December 2021 order. The mother timely appealed. The parental rights of J.E.'s

assumed father and all putative fathers were also terminated. No appearance, response, or appeal has been filed by any purported father to J.E.

## II. Review.

Our review of termination proceedings is de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted). We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

## III. Analysis.

Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the child's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Here, the appeal is limited to the first step regarding whether grounds for termination have been established.

The juvenile court found the State proved by clear and convincing evidence four grounds for terminating the mother's parental rights. We may affirm if the record supports termination on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We confine our analysis to section 232.116(1)(h).

The court may terminate under section 232.116(1)(h) if it finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The fourth element alone is in dispute: whether the child could be returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

We agree with the juvenile court that J.E. could not be returned to the mother's care at the time of the termination hearing. While she has made some progress towards the permanency goals outlined by DHS, improvements have been insufficient to demonstrate that she can meet J.E.'s health and safety needs. Despite agency support, the mother has failed to secure stable housing. She has failed to take an active role in J.E.'s medical care, relying entirely on his foster mother and missing most of his healthcare appointments. She has likewise failed to demonstrate progress in understanding the care J.E. requires. DHS reports she has exhibited an inability to regulate her emotions and becomes easily overwhelmed by J.E.'s needs. She has continued to miss visits with J.E. both when the agency was providing transportation and when she began driving herself.

When she has not missed her visits with J.E., the mother has fallen asleep at visitations and almost dropped the child due to twitching. A DHS report from November 2021 indicates that the mother has struggled with substance abuse for

over a decade. In fact, she admitted to using during her pregnancy, and J.E. tested positive for methamphetamine at his birth. She has likewise admitted to refusing drug testing during this case to avoid positive results. She tested positive for methamphetamine and other illegal substances on multiple occasions but has tested negative in the months leading up to the termination hearing (specifically, in July, September, and October 2021). Nonetheless, she has admitted she has a history of becoming sober and eventually relapsing when things spiral out of control. The mother obtained a mental health evaluation, albeit eleven months after DHS recommended doing so, and she has failed to follow through on the related recommendations for PTSD treatment.

We recognize that the negative drug tests and securing of a housing voucher as well as a part-time job and driver's license are significant steps for J.E.'s mother. However, while we commend the progress that she has begun making in the final months leading up to the termination hearing, we find these actions are insufficient and too late. Iowa law affords limited patience for parents to demonstrate the child can safely be returned to his or her care. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (discussing the age-associated timelines for a determination that the needs of a child would be promoted by termination of parental rights). "The purpose of these limitations is to prevent children from being perpetually kept in foster care and to see that some type of permanent situation is provided for the children." *In re J.P.*, 499 N.W.2d 334, 339 (Iowa Ct. App.1993). At the time of the termination hearing, J.E. had been removed from his mother's care for fifteen months, and she had not progressed beyond fully supervised visits. Moreover, the mother conceded in her testimony that she was not able to take him

into custody at the time of the termination hearing because he could not stay at her mother's residence and she was still searching for other housing.

We cannot say that the mother has demonstrated promise towards offering a permanent home capable of meeting J.E.'s needs. "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012). Here, the mother's track record is not favorable. Her parental rights to three other children have previously been terminated, while two additional children were placed with family members. She has previously spent six months in prison and has battled substance abuse for many years now. Her lack of reliable transportation would also present a significant challenge to ensuring J.E.'s continued attendance at all necessary medical appointments.

Given the mother's lack of safe and stable housing, failure to see a PTSD therapist, history of substance abuse, and absence at J.E.'s medical appointments, we find there is clear and convincing evidence that the child could not be returned to her care at the time of the termination hearing.

**AFFIRMED.**