**IN THE COURT OF APPEALS OF IOWA**

No. 22-0445
Filed April 27, 2022

**IN THE INTEREST OF B.T.,**
**Minor Child,**

**M.B., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka,

Associate Juvenile Judge.


        A mother appeals the termination of her parental rights to one child.

**AFFIRMED.**


        Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, for appellant

mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Taryn R. McCarthy of Clemens Walters Conlon Runde & Hiatt, Dubuque,

attorney and guardian ad litem for minor child.


        Considered by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

This appeal involves the termination of a mother's parental rights to her child, B.T. The mother, M.B., argues an extension should have been granted and termination would be detrimental and not in the child's best interests. Upon our de novo review, we affirm termination of her parental rights to this child.

## I. Backgrounds Facts and Proceedings.

The child in question is less than two years of age and tested positive for methamphetamine at her birth in September 2020. The mother admitted to using methamphetamine throughout her pregnancy and even the day prior to giving birth. She also acknowledged more frequently using marijuana and taking illicit Adderall during her pregnancy. After B.T.'s birth, M.B. showed some initial signs of progress. She engaged with safety planning and voluntary services while B.T. was briefly placed with her paternal grandmother. M.B. began outpatient substance abuse treatment in November 2020, and she was successfully discharged in mid-February 2021. She provided a clean drug test in early March 2021 but subsequently began missing drug testing. She provided various reasons for missing testing, including lack of transportation, being out of town, being sick, or quarantining due to possible exposure to COVID-19.

A new child protective concern was reported to DHS in early May 2021. After discussing the allegations, M.B. agreed to a safety plan placing the child with her paternal grandmother until a clean drug test could be achieved. She provided a urine sample that came back clean in an instant test. M.B. also did a hair stat that day and had a sweat patch applied. The hair stat came back positive for methamphetamine, and M.B. removed the sweat patch before it could be tested.

M.B. continued to miss drug testing from May through October 2021. She admitted methamphetamine use in July 2021 and provided a positive drug test in November 2021. She started outpatient substance-abuse treatment again in the fall of 2021, but she quit treatment after November 23 until about two weeks prior to the termination hearing. At a meeting with DHS in December 2021, M.B. acknowledged using methamphetamine within the last two weeks. She expressed intent to begin in-patient treatment at the end of 2021, rescheduled for January 2022, and ultimately has not followed through.

M.B. takes medication for her mental health, but there are concerns about its effectiveness and interaction with her drug use. She has been employed, attending community college, and able to support herself. She has also maintained stable housing, and no concerns have been noted about her home. Since B.T.'s removal in May 2021, M.B. has not progressed beyond fully supervised visits. M.B. reportedly does well with B.T. during the visits and has a bond with her.

M.B. has a history of child abuse assessments related to substance use and failure to provide proper supervision. She is now in her mid-thirties and has struggled with substance abuse since she was a teenager. M.B. has four other children, none of whom are in her care. Her parental rights were terminated to two of the children for substance-abuse issues in 2006 and 2016. The remaining two children are living with relatives. She has an extensive criminal history that includes substance-related charges, as well as theft and assault. She has been in prison twice and was reportedly scheduled to complete probation in February 2022. However, at the time of the termination hearing in February 2022, M.B. had

an active warrant out for her arrest on a probation revocation and did not appear personally for the hearing.

After the hearing, the juvenile court terminated M.B.'s parental rights with respect to B.T. She has timely appealed. The parental rights of B.T.'s father were also terminated, but he has not appealed.

## II. Review.

Our review of termination proceedings is de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted). Though not binding, we give weight to the juvenile court's fact findings. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

## III. Discussion.

Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the child's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We address each step in turn, bearing in mind that our primary concern on review is the child's best interests. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020).

The mother contests the statutory grounds for termination only to the extent that she argues a six-month extension should have been granted. Iowa Code

section 232.104(2)(b) authorizes extending a child's placement for an additional six months if the court identifies "specific factors, conditions, or expected behavioral changes" that provide a basis for determining "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Here, the mother's history simply does not support giving her more time to address her substance-abuse issues. She has been engaged in services since B.T.'s birth, and on other prior occasions, without long-term success. She admitted using methamphetamine and provided a positive drug test in late January 2022, just weeks before the termination hearing. "We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). While we commend M.B.'s efforts to seek treatment, we remain unconvinced that her addiction will be resolved within six months.

After the expiration of the statutory limitation period allowed to remedy a lack of parenting skills (six months here), Iowa law affords parents limited patience to demonstrate the child can be safely returned to her care. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000) (discussing the age-associated timelines for a determination that the needs of a child would be promoted by termination of parental rights). "The purpose of these limitations is to prevent children from being perpetually kept in foster care and to see that some type of permanent situation is provided for the children." *In re J.P.*, 499 N.W.2d 334, 339 (Iowa Ct. App.1993). Given the mother's sustained cycle of use, treatment, and relapse, we do not find that a six-month extension would be appropriate in this case.

The mother also argues termination was not in the child's best interests. The State contests error preservation on this issue. Upon our review of the record, we agree that because M.B. did not explicitly contend that termination was not in B.T.'s best interests during the hearing, error was not preserved on this issue. Nonetheless, because we find this issue intertwined in her request for a six-month extension to work towards reunification, we will address it. To evaluate this issue, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In this case, we agree that termination is in B.T.'s best interests. She is in a stable placement with her paternal grandmother, where she has spent most of her life. Two of M.B.'s other children reside with her sister, and permanent placement there may be an option for B.T. as well. Her mother has not been able to demonstrate a meaningful period of sobriety during the course of this case. In light of her history, we are not inclined to believe that her behavior will change in a reasonable time. *See In re A.B.*, 815 N.W.2d at 778 ("Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.").

Finally, the mother contends that the detriment termination would cause to the child warrants an exercise of our discretion. *See* Iowa Code § 232.116(3)(c) (providing a discretionary exception to termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). The State contests

error preservation on this issue. While it is unclear whether M.B. specifically requested this exception during the termination hearing, the juvenile court made findings in this regard. Accordingly, we assume without deciding that error was preserved. In support of the exception, M.B. points to the bond that she shares with her child and the fact that B.T. recognizes her as her mother. Despite M.B.'s love for her child, "our consideration must center on whether the child will be disadvantaged by termination." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). We do not find that termination would be detrimental to B.T. based on the parent-child relationship.

Because we find that neither a six-month extension nor an exception is warranted and termination was in the child's best interests, we affirm termination of M.B.'s parental rights with respect to her child B.T.

**AFFIRMED.**