# IN THE COURT OF APPEALS OF IOWA

No. 16-1141
Filed September 14, 2016

**IN THE INTEREST OF K.W.,**
**Minor Child,**

**K.B., Mother,**
    Appellant,

**R.W., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

A mother and father appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Esther J. Dean, Muscatine, for appellant mother.

Jeffrey L. Powell of Law Office of Jeffrey L. Powell, Washington, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Kathryn K. Lang, Assistant Attorneys General, for appellee State.

Christine E. Boyer, Iowa City, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother and father appeal separately from the juvenile court's order terminating their parental rights. The mother argues the State failed to prove the statutory grounds for termination by clear and convincing evidence, termination is not in the child's best interests, and she shares a bond with the child that weighs against termination. Both parents also argue the court erred in not placing the child with a relative and in denying the parents an additional six months to work toward reunification. Upon our de novo review, we affirm on both appeals.

## I.      Background Facts and Proceedings

The mother and father have one child together, K.W., born in 2009.[1] The parents were never married. The family came to the attention of the Iowa Department of Human Services (DHS) in April 2013, due to allegations of significant substance abuse by the mother and her paramour, the father of K.W.'s younger sibling, S.C. The mother voluntarily placed K.W. with the child's paternal grandmother and cooperated with voluntary services. The child was returned to the mother's care in August. In September, new concerns arose regarding domestic violence between the mother and father of S.C. The mother was also asked to consent to a drug test for herself and K.W. but failed to appear. Consequently, the State filed a CINA petition.

---

[1] The mother has four other children, all of whom were also adjudicated children in need of assistance (CINA). The juvenile court previously terminated the mother's parental rights to her youngest child, S.C., in January 2015; our court affirmed the termination on appeal. *In re S.C.*, No. 15-0236, 2015 WL 1546521, at *3 (Iowa Ct. App. Apr. 8, 2015). The juvenile court terminated the mother's parental rights to two of her other children in a separate order filed in June 2016, following hearings on the same dates as the child at issue here. The mother appealed and our court affirmed. *See generally In re D.J.*, No. 16-1143, 2016 WL 4544388 (Iowa Ct. App. Aug. 31, 2016).

In November, the mother was hospitalized for mental-health issues after threatening to harm herself in front of the children, and K.W. and her siblings were removed from her care. In December, the parents stipulated to the child's CINA adjudication, and the court returned the child to the mother's care on the condition that the mother not allow the child contact with the father of S.C.

The child was removed from the mother's care again in late February 2014 due to allegations of domestic violence between the mother and the father of S.C. and their use of synthetic cannabis (K2) while caring for the child and some of her siblings. The child was again placed with her paternal grandmother. At the time of the child's removal, the mother was in violation of a no-contact order in place between her and S.C.'s father. Following the child's removal, the mother checked herself into an inpatient mental-health facility. Thereafter, she was arrested for a probation violation after testing positive for illegal substances. In April, the mother was sentenced to a term of incarceration; she was incarcerated from April until mid-July, and then again from late July until mid-August. The mother was then transferred to a work-release program and halfway house, where she remained at the time of the review hearing in September.

In November, the child was removed from her paternal grandmother's care after the grandmother tested positive for methamphetamine. The child was then placed in family foster care. In January 2015, the State filed a petition to terminate the mother's and father's parental rights to K.W.

In February 2015, the court held a permanency hearing. The mother had been recently released from the work-release program and halfway house. She

was employed and had secured appropriate housing. She had maintained sobriety since March 2014 and had continued to participate in substance-abuse and mental-health treatment. The court noted the child was bonded to her mother and extended family. The court considered the mother's progress and granted her an additional six months to work toward reunification with the child. In May, the court returned the child to the mother's custody. In its order, the court noted the mother's progress had been slow but she was addressing the adjudicatory concerns. In August, the court held a permanency review hearing and continued placement of the child with her mother.

In October, the child was removed from the mother's care again, following the mother's admission she had used methamphetamine on multiple dates while providing care for K.W. and her other children. The mother was arrested for a probation violation and released to a rehabilitation facility for detoxification. The mother was then transported to a local hospital due to severe medical and mental-health issues; she was later discharged.

In December, the State filed an amended petition to terminate the parents' parental rights to K.W.

In January 2016, the mother began treatment in an intensive outpatient substance-abuse program. In February, the mother was unsuccessfully discharged from the treatment program after failing to make any progress toward her treatment goals.

The court held a termination hearing on dates in February and March. At the time of the hearing, visitation between the mother and K.W. was fully supervised. The mother was minimally participating in visitation with the child

and had cancelled the three most recent visits; the last visit prior to the start of the termination hearing had occurred in December 2015. The mother tested positive for amphetamine and methamphetamine in early March 2016 while the termination hearing was ongoing. The court noted the mother had not successfully completed substance-abuse or mental-health treatment.

The father has generally been uninvolved since the inception of the case in 2013, having refused to participate in services. In January 2014, the father was arrested and incarcerated. The father was transferred to a halfway house but subsequently violated the terms of the facility and his probation was revoked. He remained incarcerated at the time of the termination hearing and had only limited contact with the child.

The juvenile court terminated the mother's parental rights to K.W. pursuant to Iowa Code section 232.116(1)(f), (g), and (*l*) (2015). The court terminated the father's parental rights pursuant to section 232.116(1)(f). The mother and father separately appeal.

## II.     Scope and Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

### III.    Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established statutory grounds for termination, we consider whether termination is in the children's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

### A.    Statutory Grounds

The mother contends the State has not proved the statutory grounds for termination by clear and convincing evidence.[2] The juvenile court terminated the mother's parental rights to K.W. pursuant to Iowa Code section 232.116(1)(f), (g), and (*l*). When a court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Evidence is clear and convincing "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *In re M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

---

[2] The father does not challenge the statutory grounds for termination on appeal, thus we do not address this issue as to the father and affirm the termination under section 232.116(1)(f). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating that when a parent does not challenge the existence of statutory grounds, we need not address the issue).

Iowa Code section 232.116(1)(f) provides the court may terminate a parent's parental rights if the State proves by clear and convincing evidence the child (1) is four years of age or older; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing.

The mother concedes the first two elements of paragraph (f)—the child is over the age of four and has been adjudicated CINA.  The mother challenges proof of the third and fourth elements—whether the child has been removed from her physical custody for at least twelve of the last eighteen months and whether the child could have been returned to her care at the time of the hearing.

The record shows the child was in and out of the mother's care several times over the eighteen months leading up to the start of the termination hearing. The child was removed from the mother's custody in November 2013 and returned less than a month later in December.  The child was again removed in February 2014 and remained out of the mother's custody until late May 2015. The child was removed a third time in mid-October 2015, when the mother relapsed on methamphetamine while caring for the child.  The termination hearing began in mid-February 2016.  Thus, the child was out of the mother's custody the requisite twelve of the last eighteen months preceding the termination hearing.

At the time of the termination hearing, the mother was minimally participating in fully supervised visitation with K.W.  She had cancelled three

recent visits and had not seen K.W. since December 2015. The mother had not successfully completed substance-abuse or mental-health treatment. She relapsed on methamphetamine in October 2015 and tested positive for amphetamine and methamphetamine after the first two days of the termination hearing. On our de novo review of the record, we find the State proved by clear and convincing evidence the child could not be returned to the mother's custody at the time of the termination hearing.

We affirm the termination of the mother's parental rights to K.W. under section 232.116(1)(f).

### B. Best Interests

Even if a statutory ground for termination is met under section 232.116(1), a decision to terminate must still be in the best interests of the child under section 232.116(2). *In re M.W.*, 876 N.W.2d at 224. In considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The record demonstrates the mother has struggled with substance-abuse and mental-health issues for over three years. In the first part of 2015, the mother was making progress on her case plan: she was employed, she had appropriate housing, and she was addressing her mental-health and substance-abuse problems. The court looked at the mother's progress and her bond with the child and decided to give the mother another six months to work toward reunification, even though the child's guardian ad litem and the Foster Care

Review Board did not support returning the child to the mother's custody. In May 2015, the child was returned to the mother's care and did well for a while. Less than five months later, the mother relapsed and began a downward spiral. She cancelled visits with the child. Between days of testimony at the termination hearing, she tested positive for methamphetamine and amphetamine. She also failed to complete mental-health and substance-abuse treatment.

By the father's own admission, he had relatively little involvement in this case for over two years. In August 2015, he started visitation with the child while he was incarcerated. The father was incarcerated for the majority of this case and remained incarcerated at the time of the termination hearing. At one point the father was released to a work-release program and halfway house, but he violated the terms of the facility and his probation was revoked.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d at 41. Indeed, we cannot ask this child to continuously wait for her parents to become stable. *In re D.W.*, 791 N.W.2d at 707 ; *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). Upon our de novo review, we find termination is in the child's best interests.

### C.     Exceptions to Termination

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d at 225.   "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d at 113 (citation omitted).

The mother asserts she shares a bond with her child that weighs against termination of her parental rights.   *See* Iowa Code § 232.116(3)(c) (providing a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship").

The juvenile court considered the permissive factors in section 232.116(3) and found:

> The child is bonded to her parents.  Given the child's age and the testimony and exhibits, the Court concludes that the child needs permanency.  The child needs to know where she will live.  She has been removed from parental custody multiple times.  She has been placed with family members, her mother, and now in foster care. Neither parent has made progress since 2013.  [The mother] has unresolved mental-health issues.   She continued to abuse methamphetamine even after this hearing began.  She remained on parole at the time the hearing concluded and faced the possibility of returning to the [Iowa Department of Corrections].   [The father] remains incarcerated and has minimal contact with his child. Neither parent is meeting the child's basic needs.

Upon our de novo review, we agree with the juvenile court's assessment and conclude none of the permissive factors apply so as to preclude termination of the parents' parental rights.

### D.    Relative Custody

The parents argue the juvenile court should have been transferred custody of the child to a paternal relative.   Once the juvenile court concludes there is clear and convincing evidence to terminate a parent's parental rights, Iowa Code section 232.117(3) allows the juvenile court to transfer guardianship and custody of the child to DHS, a child-placing agency, or a relative of the child. "There is no statutory preference for a relative."  *In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992).  Our focus remains on the best interests of the child.  *See id.*

The juvenile court declined the parents' request for transfer of custody of the child to a relative, stating:

> [The child's paternal aunt] is clearly a viable option for future custody and/or adoption; however, the Court agrees with [DHS]'s position that the child should not be transferred until a final decision is made regarding adoption.  [The aunt] has an approved home study.  She is approved for both custody and adoption.  The Court has no concerns regarding the care that she could provide to the child.  [DHS] concedes that she is a viable placement option since [DHS] has recommended another of [the father]'s children be placed in her custody at this time.  The Court is reluctant to transfer the child, because the Court concludes that the child needs stability.  As noted above, this child has been placed with her mother, relatives, and in foster care since the CINA case began. . . .  [K.W.] is clearly struggling and confused as to what her future placement will be. . . .  The Court concludes that it would not be in the child's best interest to be placed with [the aunt] only to be removed if another adoptive home is selected; therefore, the Court concludes that while [the aunt] is an appropriate custodial home, it is in the child's best interest that she remain in her current placement until an adoptive home is selected.

Upon our de novo review of the record, we agree with the juvenile court's conclusion.

### E. Additional Six Months

Both parents also argue the juvenile court erred in denying them an additional six months to work toward reunification with K.W. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

At the time of the termination hearing, the father was still incarcerated and awaiting transfer to a halfway house. The father was transferred to a halfway house earlier in this case, and he failed to comply with the facility's rules, which resulted in a probation revocation and him being incarcerated again. The father has had only limited contact with the child for several years due to his own actions. He has failed to show how circumstances would be different such that the need for removal would no longer exist at the end of the six-month period. *See* Iowa Code § 232.104(2)(b).

The juvenile court already granted the mother an additional six months to work toward reunification with the child. She showed progress for several months before relapsing and starting on a downward spiral again. The mother has had three years, which is well past the statutory timeframe, to work toward reunification with her child. We must now view this case with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009).

Our review of the record does not persuade us that the need for removal would no longer exist at the end of an additional six months. *See* Iowa Code § 232.104(2)(b). Accordingly, we affirm the juvenile court's denial of the parents' request.

**IV.    Conclusion**

Upon our de novo review, we conclude the State proved the statutory grounds for termination by clear and convincing evidence, termination is in the child's best interests, and no exceptions to termination apply. We agree with the juvenile court's decision to continue custody of the child with DHS, and its denial of the parents' request for an additional six months to work toward reunification with their child. We affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**