In the Interest of R.J. and
A.J., Minor Children,

P.J., Mother, Appellant.

No. 92–657.

Court of Appeals of Iowa.

Nov. 30, 1992.

Edward J. Kross of Shaff, Van Scoy &
Kross, P.C., Clinton, for appellant.

Bonnie J. Campbell, Atty. Gen., John M.
Parmeter, Sp. Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for
appellee-State.

Jeffrey J. Farwell of Farwell & Bruhn,
Clinton, guardian ad litem.

Heard by DONIELSON, P.J., and
HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Patti [1] and Robert were married on October 18, 1980. The marriage was dissolved
on May 5, 1989. The decree awarded the
physical care of the parties' two boys to
Patti. On April 20, 1990, the boys, Rick
and Alan, were adjudged to be children in
need of assistance as defined in Iowa Code
section 232.2(6)(f). On April 23, 1991, the
boys were adjudged in need of assistance
pursuant to section 232.2(6)(b) and (c).

On November 4, 1991, the State filed an
application to terminate the parental rights
of Patti and Robert. At the time of trial .

1. Patti, Robert, Rick, and Alan are not the parties' real names. The mother's initials are P.J.;
the father's are R.J. Sr.; and the children's are
R.J. and A.J. We have used the pseudonyms
Patti, Robert, Rick, and Alan throughout the
opinion for the sake of simplicity in identifying
the parties.

Rick was nine years old and Alan was seven years old. The State presented evidence of founded and unfounded reports of both physical and/or sexual abuse perpetrated on both boys by their parents and by three of Patti's boyfriends.

Although Patti advocated she had changed her life, the juvenile court was not convinced she could adequately care for or protect the boys from further abuse. The court noted several characteristics of Patti's lifestyle. Patti has shown a propensity to live with violent and abusive men. She has gone from one abusive relationship into another and continued to expose Rick and Alan to abuse. The court found at least five founded reports of abuse existed. Patti has failed to protect her sons from an abusive environment. She has declined many of the numerous offers of assistance provided by various social workers and public welfare agencies. The juvenile court terminated Patti's parental rights pursuant to Iowa Code section 232.116(1)(c) (1991). The court declined Patti's suggestion to place the children with her sister who resides in Colorado. The court also concluded Robert had abandoned his children and thus terminated his parental rights pursuant to Iowa Code section 232.-116(1)(b) (1991).

Patti appeals. She contends the juvenile court erred in (1) terminating her parental rights pursuant to Iowa Code section 232.-116(1)(c)(2) because DHS had failed to provide adequate services, (2) failing to grant her request for a home study and in transferring custody of the boys to DHS rather than to a relative, and (3) failing to transfer custody to Robert and keeping the boys in foster care.

■ Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.,* 431 N.W.2d 196, 199 (Iowa App.1988) (citing *Dameron,* 306 N.W.2d at 745)).

I. *Termination of parental rights.* Iowa Code section 232.116(1)(c) authorizes a court to terminate parental rights if the court determines both of the following occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(c) (1991).

■ It is undisputed Rick and Alan were adjudicated children in need of assistance. In addition, we find clear and convincing evidence shows the second subsection is satisfied.

Patti has been involved with DHS since July of 1986. Her involvement with DHS has been related to her inability to provide adequate protection and care for Rick and

Alan. Over the past six years Patti has been offered numerous services and support programs. In addition to homemaking and parenting classes, counseling and therapy programs were offered to address the abuse problems. There are founded reports of both physical and/or sexual abuse of both boys by their mother and her three boyfriends. At trial Patti admitted the abuse had occurred in all three relationships and she was aware of it. When questioned further about her involvement in the sexual abuse, Patti quit attending the counseling sessions. Appointments for sexual abuse counseling were made for the boys, but Patti failed to keep the appointments. It seems Patti has not confronted the sexual and/or physical abuse problems and has not taken any responsibility for the children's exposure to sexually and physically abusive environments. She testified she had been a "victim of circumstance." "The requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs." *In re H.R.K.*, 433 N.W.2d 46, 50 (Iowa App.1988).

Patti argues her parental rights should not be terminated because she is changing her lifestyle. However, the juvenile court found "[Patti] was offered assistance and counseling on numerous occasions. She accepted some and refused some. None of the assistance made a difference in her behavior or corrected the dangerous and abusive environment that these boys were in." In its termination order the juvenile court stated "[this] Court has heard no credible testimony, nor has it seen any evidence that [Patti] has or will change her lifestyle." We agree with the juvenile court's conclusion. During Patti's alleged rehabilitation period following the filing of the termination petition, evidence supports the court's conclusion because Patti has not participated in any women's support groups, counseling or therapy dealing with abusive relationships, or counseling dealing with the abuse of her sons. The amount of patience for Patti's actions must be reasonably limited because "patience with parents can soon translate into intolerable hardship for their children." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied sub nom. A.C. v. State*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

*Id.* Patti has not achieved the level of maturity and stability to properly parent and protect her children. She has continued to put her own needs before the needs of her children for a stable and secure home.

The record shows Patti often voluntarily placed Rick and Alan in foster care. After the adjudication on April 20, 1990, Patti placed the boys in foster care. DHS returned them after the June 6, 1990, dispositional hearing only to have Patti return them to foster care on July 5, 1990. Patti returned the boys because she decided to resume living with a boyfriend who had just been released from jail. The boyfriend had been serving time for abusing her sons. In August of 1990 Patti moved into the Transitional Living Center at the YMCA in Clinton, Iowa. On January 4, 1991, DHS again returned the boys to Patti's care. While residing at the center Alan started a fire in a room, and the boys were found playing with knives. The staff at the center asked Patti and the boys to leave. On July 7, 1990, Patti contacted DHS stating she and her boyfriend were going to leave that night to join a carnival and she was going to leave the boys with a neighbor. She said she would return in a year or so to pick up the boys. By the time the DHS worker arrived at Patti's house, Patti had decided not to join the carnival; however, she still voluntarily placed Rick in foster care.

On August 8, 1991, an emergency removal order placed Alan in foster care. The emergency removal was based on evidence showing Patti, her third boyfriend, and Alan were living under a bridge. When they arrived at DHS, Alan appeared to have bug bites over his feet, arms, and face.

The disregard Patti shows toward the welfare of her children cannot continue. Evidence clearly shows Patti tolerated sexual abuse of her children and failed to exercise reasonable care in supervising them. This evidence provided sufficient bases for termination of her parental rights. We determine the requirements of Iowa Code section 232.116(1)(c)(2) have been met. Reasonable efforts have been made to prevent or eliminate the need for removal of these children from the home. The problems which led to the adjudication, however, still exist. Because of the mother's past behavior and her reluctance to deal with the abuse issues, we conclude it is in the best interest of Rick and Alan to terminate Patti's parental rights.

The juvenile court terminated Robert's parental rights on the basis he abandoned Rick and Alan. He does not appeal that decision.

We affirm the juvenile court on this issue.

■ II. *Denial of home study and transfer of custody to relative.* Iowa Code section 232.117(3) lists the options for placement of children if the court terminates parental rights. The juvenile court has the authority to place the children with DHS, a suitable child-placing agency, or a relative or suitable person. Iowa Code § 232.117(3) (1991). There is no statutory preference for a relative. The paramount concern is the best interest of the children. Patti's sister has only seen the boys once, in 1985. There has been no other contact between the children and their aunt. In addition, Patti had little contact with her sister before the petition for termination was filed in November of 1991. There is also concern over the testimony Patti planned to move into a mobile home next to her sister. *In re L.S.*, 483 N.W.2d 836, 840 (Iowa 1992). "It is in the children's best interests to remove them from the detrimental influence of their parents and provide a custodian who is free from the assertion by the parents of their legal rights." *Id.* The court denied a home study on the basis such a placement would not be in the children's best interests and they would not be adequately protected. We affirm the juvenile court on this issue.

■ III. *Placement of children with DHS did not prejudice return of children.* Patti contends the failure of DHS to transfer custody of the children to Robert rather than to foster care frustrated the children's return to her home. This issue has not been properly preserved for appeal. In addition, Robert has not appealed on any alleged failure of DHS to contact him when the children were placed in foster care. Patti is trying to assert the rights of another as the basis of her claim. As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal. *Conner v. State*, 362 N.W.2d 449, 457 (Iowa 1985) (citation omitted).

We affirm the juvenile court in all respects. Costs of this appeal are taxed to appellant.

AFFIRMED.

DONIELSON, P.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part. I agree with the majority that the State has met the legislative requirements necessary for terminating parental rights. I agree with the majority decision to affirm the trial court on that issue. I disagree with their decision to affirm the trial court's refusal to check the children's maternal aunt's home as a placement.

While I agree with the majority that under the law we are required to terminate this mother's parental rights, I do not necessarily agree with the majority that termination of parental rights is in the children's

best interests. These children clearly would be better served if we could assist their mother in correcting her parenting deficiencies so they could be reunited as a family. The biological mother finally seems to be stabilizing her life. She has moved in with her parents, terminated her relationship with an abusive boyfriend, has gotten a restraining order preventing him from contacting her, has obtained her GED, and is taking job and parenting skill classes.

The children, who were born in 1982 and 1984, are now eight years old and eleven years old, they know their birth parents, have bonded with them, and know their extended families. The children are scarred by abuse and poor parenting, the insecurities of being removed from their original home, and being put in several homes in the system. They have a maternal aunt who has asked to be considered as a placement option for them and, without a study of her home, she has been turned down. Terminating biological ties of children is difficult for children and even more difficult for children who know and have bonded with their birth parents. Furthermore, when children's parental rights are terminated they have no legal parent unless an adoption takes place. When children are the ages of these children, eight and eleven, they frequently are not adopted. If adopted, their adoptive parents frequently find parenting extremely difficult because of the children's backgrounds and the unresolved problems with their birth parents. Unfortunately, as judges, we are generally put in the position of terminating parental rights with no clear evidence of what will be provided for the children as parents, if any, after the termination takes place.

With the difficulty in finding adoptive homes, I find no valid reason for not checking out the home of the aunt who has manifested a desire to have the children and would keep these children's biological ties intact.

I would affirm the termination of the mother's parental rights, but reverse to order a home study of the aunt's home to determine if she is a proper placement.