# IN THE COURT OF APPEALS OF IOWA

No. 18-0919
Filed August 15, 2018

**IN THE INTEREST OF N.H.,**
**Minor Child,**

**V.B., Maternal Grandmother,**
    Appellant-Intervenor.

_____

Appeal from the Iowa District Court for Hancock County, Karen Kaufman Salic, District Associate Judge.

Intervenor appeals from the juvenile court's order denying a motion to modify placement. **AFFIRMED.**

Colin R. McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant maternal grandmother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Carrie Jean Rodriguez of Garland & Rodriguez, Garner, guardian ad litem for minor child.

Considered by Potterfield, P.J., Bower, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

This appeal arises out of a proceeding to terminate parental rights pursuant to Iowa Code chapter 232 (2017). The juvenile court terminated the mother's and father's parental rights to their four-year-old child, N.H., and transferred guardianship and custody of the child to the department of human services. The department chose the child's foster-home placement as her adoptive home. The mother's appeal was dismissed as untimely; the father did not appeal.

The maternal grandmother, intervenor V.B., now appeals from the juvenile court's order denying her motion to modify placement and have N.H. placed with her. We review the juvenile court's post-termination order de novo. *See In re E.G.*, 745 N.W.2d 741, 743 (Iowa Ct. App. 2007).

This family came to the attention of the department in 2016, when the mother (who had not known she was pregnant) delivered a baby, J., prematurely at home in the toilet. The mother and N.H. were residing with the maternal grandparents. Although the mother denied substance use, the mother, N.H., and J. all tested positive for methamphetamine. N.H. was removed from the home and placed in foster care in December 2016.[1]

V.B.'s motion to intervene was granted in April 2017. V.B. repeatedly denied the mother's usage and stated the mother had no opportunity to use because V.B. was supervising her, even after the mother admitted to ongoing methamphetamine use and drug tests confirmed the mother's continued use. The department informed the court it did not support the child's placement with V.B.

---

[1] The mother relinquished her parental rights to J., acknowledging she could not take care of him.

In a July 2017 review order, the juvenile court observed V.B. "continues to enable Mother's drug use, including lying to cover for her." The court found, "This is not helpful to reunification efforts, or the possibility of being able to safely place [N.H.] back in [V.B.]'s home." In the November 2017 permanency order, the court noted V.B. "continues to minimize and seem surprised by Mother's ongoing drug use." The court found V.B's ability to protect N.H. from the mother to be "questionable" and stated, "While [V.B.] no doubt loves [N.H.], she does not see how her inaction over the years has contributed to and enabled Mother's drug use and neglect of [N.H.]." The court also observed, "[I]t is unlikely [V.B.]'s home study would be approved for adoption (she has not started [foster parenting classes]) in a timely fashion, so moving [N.H.] from a home where she is doing well would be detrimental." Meanwhile, V.B. started a GoFundMe account to get N.H. "back from the State," claiming the family was being "bull[ied]" by the State. V.B. was allowed monthly supervised visits with N.H.

As of the time of the termination hearing in February 2018, N.H. had been in the same foster home since her removal in 2016. The department did not support N.H.'s placement with V.B., citing concerns that V.B. continued to minimize the mother's drug use and claimed N.H.'s positive drug test was not accurate. The juvenile court acknowledged similar concerns in the termination order:

> [V.B.] has consistently failed to acknowledge Mother's heavy and sustained drug addiction, claiming not to have noticed at all. Her lack of awareness allowed Mother to use methamphetamine daily for years and to expose [N.H.] and in utero, [J.], to drugs. Even after over a year of hearing Mother's eventual admissions of heavy drug use and multiple positive drug tests through the CINA case, she continues, even at the termination hearing, to deny Mother's use, make excuses and enable Mother's refusal to participate in treatment. She continues to dispute the accuracy of Mother's,

[N.H.'s] and [J.'s] drug test results when [J.] was born, even though Mother admits she was using during that time. There is no doubt that [V.B.] loves [N.H.] and doesn't want anything bad to happen to her; however, she has consistently failed to protect her in the past and clearly is unwilling to do anything differently in the future.

The guardian ad litem did not support moving N.H. from her foster-home placement to V.B.'s home. The department indicated it was working toward N.H.'s adoptive placement with her foster mother.

A hearing on V.B.'s motion to modify placement took place in May 2018. The department and the guardian ad litem recommended that N.H.'s long-term placement be adoption. V.B.'s attorney acknowledged "there's legitimate concerns about [V.B.'s] ability to either spot or acknowledge the mother's drug use [which makes V.B.] potentially a harmful placement" but argued "now that the mother's rights have been terminated [and] my client at least according to her doesn't know where the mother is living right now except for a city," "there's no longer that safety concern, and that's why at this point it would be appropriate to place [N.H.] in her care." The juvenile court declined to modify the child's placement, finding:

> [N.H.] has been in the same foster home for a very long time and is doing very, very well there and has made a great deal of improvement. The Court had, of course, at the time of termination made consideration of, you know, where guardianship should be placed, and by virtue of her involvement throughout the case, the Court obviously gave some consideration to whether [V.B.] was appropriate at that point and concluded that it was not, and that continues to be the case.

In its written order, the court further stated:

> [N.H.]'s grandmother again requests placement of [N.H.] with her. None of the prior concerns have been resolved, with the exception that biological mother is not living with her. (She delayed for nine months before having biological mother move out and

continued to support her even after moving out.) [V.B.] persists in her argument that [N.H.]'s and biological mother's drug tests were false positives despite biological mother's continual admissions to methamphetamine use. Her inability to move past that, plus the unlikelihood that she would be able to protect [N.H.] from contact with her biological mother, make disrupting [N.H.]'s current placement unwise. Further, the Department, as the child's guardian and custodian has the sole discretion in selecting [N.H.]'s adoptive home.

V.B. appealed. She also filed an application for stay of the proceedings below, which was denied by the Iowa Supreme Court.

On appeal, V.B. contends the juvenile court "should have placed the minor child N.H. with [her] pursuant to the least restrictive placement standard of Iowa Code § 232.102." *See* Iowa Code § 232.117(3)(c) (allowing the court to transfer guardianship and custody of the child to "[a] parent who does not have physical care of the child, other relative, or other suitable person" after terminating the parental rights of the child's parents).

"When a court terminates parental rights, there is no statutory preference for placement with a relative." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). Both the department and the guardian ad litem recommended placing N.H. in the guardianship and legal custody of the department so the child could be adopted. *See id.* The juvenile court made strong findings, all supported by record evidence, as to why N.H. should not be placed in V.B.'s care over the foster mother. *Cf. In re A.P.*, No. 18-0228, 2018 WL 2727826, at *3 (Iowa Ct. App. June 6, 2018). We adopt these findings as our own. Under these facts and circumstances, changing placements would not serve N.H.'s best interests. *See In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992) ("The paramount concern is the best interest of the [child].").

We affirm the juvenile court's order denying the intervenor's motion to modify placement of this child.

**AFFIRMED.**