# IN THE COURT OF APPEALS OF IOWA

No. 22-0803
Filed September 21, 2022

**IN THE INTEREST OF L.R.,**
**Minor Child,**

**C.R., Father,**
         Appellant,

**J.D., Mother**
         Appellant.
_____

Appeal from the Iowa District Court for Dickinson County, Shawna L. Ditsworth, District Associate Judge.

Parents appeal the order terminating their rights to their child. **AFFIRMED ON BOTH APPEALS.**

Elizabeth K. Elsten, Spirit Lake, for appellant father.

Bethany Brands of Boji Legal Services, PLLC, Spirit Lake, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated both parents' parental rights to their seven-year-old child. At the time of the termination hearing, the father was in federal prison with an expected release date in 2025. The mother had been released from state prison to a halfway house about two weeks before the hearing. Both parents appeal.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if at least one statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Then we address any additional claims raised by the parents. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

Each parent raises four claims: (1) statutory grounds for termination were not established[1]; (2) termination is not in the child's best interests; (3) the closeness of the parent-child bond should preclude termination; and (4) an additional six months to work toward reunification should have been granted. We address each claim in turn.

---

[1] In addition to their broad challenge to the statutory grounds, both parents claim the State failed to make reasonable efforts towards reunification. The State "must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the parent," which is a statutory element under the grounds claimed in this case. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). So we will address their reasonable-efforts claims within our discussion of the statutory grounds authorizing termination.

**I.  Statutory Grounds.**

The juvenile court terminated the parents' rights pursuant to Iowa Code section 232.116(1)(f) (2021), which permits termination upon proof that (1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance (CINA); (3) the child has been removed from the physical custody of the child's parents for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) the child cannot be returned to the custody of the child's parents at the time of the termination hearing.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting section 232.116(1)(f)(4)'s use of the phrase "at the present time" to mean at the time of the termination hearing).  Both parents concede the first three elements and limit their challenge to proof of the fourth—whether the child could be returned to their custody.

The mother asserts that the child could be returned to her custody at the time of the termination hearing because children are permitted to live at the halfway house at which she resided.  While that may technically be true, it would have been unreasonable to permit the child to do so here.  The mother has a long history of mental-health and substance-abuse problems.  She just finished a seven-month stretch in prison on a burglary charge and was only released a few weeks before the hearing.  She had not demonstrated the ability to remain drug free in the community and had just started scheduling mental-health treatment.  *See C.B.*, 611 N.W.2d at 495 ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."); *In re J.W.*, No. 22-0002, 2022 WL 2348175, at *1 (Iowa Ct. App. June 29, 2022) (declining to place any significance on a parent's period of sobriety

because it occurred in a custodial setting); *In re E.T.*, No. 20-1637, 2021 WL 811173, at *2 (Iowa Ct. App. Mar. 3, 2021) (noting a mother's "eleventh-hour efforts" to address her mental health were not sufficient); *In re B.H.*, No. 19-1696, 2020 WL 376557, at *1 (Iowa Ct. App. Jan. 23, 2020) (considering a mother's unaddressed mental-health issues when determining her child could not be returned to her care). The child could not be safely returned to her custody at the halfway house or anywhere else.

We reject the father's argument as well. As noted, the father is in prison, so the child obviously could not be placed in his custody. *See In re D.N.-M.*, No. 22-0886, 2022 WL 3421321, at *1 (Iowa Ct. App. Aug. 17, 2022) (concluding a child could not be returned to the father because the father was incarcerated at the time of the termination hearing). The father tries to avoid this flaw in his argument by arguing that the child could be returned to the mother's custody. But, this does not save him. As we have already ruled, the child could not be returned to the mother. Further, even if that were not the case, the father cannot assert facts or legal positions pertaining to the other parent, as the court makes a separate adjudication as to each parent. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005).

However, both parents assert that any barriers to reunification are the result of the failure of the Iowa Department of Health and Human Services (DHHS) to make reasonable efforts to reunify the child with the parents. While not a strict substantive requirement of termination, the State must show reasonable efforts as part of its ultimate proof that a child cannot be safely returned to the care of a parent. *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). The parents suggest a

number of different efforts that the DHHS should have offered that they claim would have helped them progress toward reunification.

The problem for the parents is that making these suggestions to us—or even to the juvenile court at the termination hearing—is too late. "If a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Further, the complaint must be made to the juvenile court, as voicing the complaint to a social worker is insufficient. *Id.* "[I]f a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.*

The parents are doing exactly what *C.H.* says they cannot, which is wait until the termination hearing to challenge the reasonableness of the DHHS's efforts. *See id.* Here, the juvenile court made reasonable-efforts findings at each stage of the CINA proceeding, with no challenge to those findings made by the parents and no request for additional services being made. We find the parents have waived any reasonable-efforts challenge that would lead us to determine the child could not be returned to their respective care due to the failure of DHHS to make reasonable efforts.

Accordingly, the statutory ground authorizing termination of both parents' rights is satisfied.

## II.    Best Interests.

The parents argue termination is not in the child's best interests.[2]   The primary thrust of their argument is that the child was living with family members until shortly before the termination hearing, but, now that the child has been placed in foster care, the child may be adopted by a nonfamily member.  *See In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992) (recognizing "[t]here is no statutory preference for" relative placement post termination).  They argue this is not in the child's best interests.  *Cf. In re K.N.*, No. 17-0010, 2017 WL 1278370, at *3 (Iowa Ct. App. Apr. 5, 2017) (recognizing a parent does not have standing to challenge the placement of a child after their rights have been terminated).

The parents' argument ignores the fact that the two prior family placements ended due to the actions of the family members.  The first placement—with the child's paternal grandmother—ended when the grandmother tested positive for methamphetamine.  The second placement—with the child's grandaunt—ended when the grandaunt requested the child's removal due to personal circumstances that prevented her from being a placement or adoption option.  After these two placements fell through, the child was placed with foster parents with whom the child had previously been placed and had a very positive relationship.  We reject the parents' best-interests argument by noting and agreeing with these findings by the juvenile court:

---

[2] When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  *In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

This family was brought to the attention of the [DHHS] due to illegal drug abuse, despite a prior [CINA] proceeding which dealt with very similar issues. [The child], at the current age of seven, has nearly spent more time in an out-of-home placement than she has living with either her mother or father. [The child] has experienced removal from a relative placement due to the relative's use of illegal drugs. [The child] has now been placed with the foster family [with whom she had] previously lived for eighteen-and-a-half months. [The child] has been without a parent much of her life. [The child] cannot wait any longer for her parents, or even her relative caregivers, to choose her well-being over drug use. [The child] has transitioned back into the safety of her foster family, with whom she had developed a relationship and bond. [The child] is doing well currently, and has historically done well in the care of the foster family. [The child] is adoptable. [The child] considers her foster family her family. [The child] calls the foster family by "Mom" and "Dad" and identifies their children as her "sisters." [The child] has been out of the custody of [the mother] for well over the one-year timeframe. The court finds that [the mother's] and [the father's] past performance throughout the life of this case, as well as the prior [CINA] case, is indicative of the quality of future care each parent is capable of providing at this time. The court finds that a termination of [both parents'] parental rights is in [the child's] best interest.

**III.    Permissive Exception—Parent-Child Bond.**

Iowa Code section 232.116(3) lists a number of circumstances under which the court can deny termination even if statutory grounds for termination exist and termination is in a child's best interests. We commonly refer to these circumstances as exceptions. *See*, *e.g.*, *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). One of those exceptions is when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Both parents contend this exception should be applied to avoid termination.

We are not persuaded by the parents' contention. All exceptions in section 232.116(3) are permissive, not mandatory. *A.S.*, 906 N.W.2d at 475. Therefore, it is within our discretion whether to apply an exception based on the

unique circumstances of each case and after having considered the best interests of the child. *Id.* While we do not doubt that there is some bond between each parent and the child and there may be some corresponding emotional distress by termination, the emotional distress caused by termination pales in comparison to that already inflicted on the child by the parents' past actions and the future distress that will be inflicted on the child if the child is not given the permanency that comes with termination. By the time of the termination hearing, the father had been in prison for three years, with only limited in-person and telephone contact with the child. The mother had just gotten out of prison without making any effort to maintain meaningful contact with the child. Even before the stretch in prison, the mother had largely abandoned all parenting responsibilities and was periodically unable to be found. The child expressed excitement when able to return to her foster family, and she is reportedly doing well in that placement. Under these circumstances, we decline to apply the exception found in section 232.116(3)(c) to deny termination.

## IV. Additional Six Months.

If the juvenile court decides not to terminate parental rights, it has the option of ordering any alternative statutory permanency option, which includes giving the parents an additional six months to work toward reunification. Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving the parents an additional six months). The parents contend the juvenile court should have exercised this option.

In order to grant an additional six months for the parents to work toward reunification, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). The juvenile court was unable to find any basis for believing circumstances would meaningfully improve within six months, and neither can we.

As to the mother, we agree with the juvenile court when it said:

> [The mother] has a long-standing history of substance abuse, related legal problems and an overall history of instability in her life. [The mother] has not yet negated the risk of recurrence of harm to [the child]. Based on [the mother's] acknowledgment of her need to continue to work on herself and demonstration of an inability to work on her own issues while providing appropriate parenting at the same time, the court does not believe there is likely to be a different outcome in six months.

The father's claim fails because he is not expected to be released from federal prison until 2025, so there is no basis for believing that the problems that led to the removal of the child will be fixed within six months.

**V. Conclusion.**

Finding all issues raised by both parents unpersuasive, we affirm the juvenile court's order terminating both parents' rights to the child.

**AFFIRMED ON BOTH APPEALS.**