# IN THE COURT OF APPEALS OF IOWA

---

No. 25-1802
Filed February 11, 2026

---

**In the Interest of J.B. and R.R., Minor Children,**

**State of Iowa,**
Appellant.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Lynn Poschner, Judge.

---

**AFFIRMED**

---

Brenna Bird, Attorney General, and Mackenzie L. Moran (argued),
Assistant Attorney General, attorneys for appellant State of Iowa.

Jami J. Hagemeier (argued) and Nicole Garbis Nolan of Youth Law Center,
Des Moines, attorneys and guardians ad litem for appellees minor children.

---

Heard at oral argument
by Badding, P.J., and Chicchelly and Langholz, JJ., but decided en banc.
Opinion by Langholz, J. Dissent by Schumacher, J.

**LANGHOLZ, Judge.**

In this expedited juvenile appeal by the State, we must once again decide the effect of the legislature's extensive 2022 amendments to our child-welfare statutes on the juvenile court's authority to make decisions in the best interest of the subject child. *See* 2022 Iowa Acts ch. 1098. The precise question here—whether the Iowa Department of Health and Human Services has an absolute right to be appointed as a child's guardian after termination of the rights of both parents unless the Department waives that right—came before our court once before. *See In re T.T.*, No. 25-0072, 2025 WL 862145 (Iowa Ct. App. Mar. 19, 2025). There, we agreed with the State that Iowa Code section 232.117(3) does grant the Department that right. *See id.* at *3. And the losing party did not seek further review of our decision.

With the benefit of fresh reasoning by the juvenile court here, further briefing and oral argument by these parties, later guidance from the supreme court on the proper interpretation of our child-welfare statutes even after the 2022 amendments, and careful consideration of the most accurate interpretation of section 232.117(3), we now respectfully correct course. The statute gives the Department the highest priority in consideration among the four categories of potential guardians. But it authorizes the juvenile court to select from "any of" those categories. And like the rest of chapter 232, the court must still consider the child's best interest along with the order of priority in selecting the appropriate guardian.

We thus reject the State's argument on appeal that the juvenile court was mandated to appoint the Department as guardian merely because the Department had not waived its right to first-priority consideration. The State makes no other challenge to the juvenile court's order transferring guardianship and custody to the children's foster parents. And so, we affirm.

2

I.

A one-year-old son and newborn daughter were removed from their parents' custody in December 2024.[1] Leading up to removal, the son endured significant instability—his parents used methamphetamine, his mother regularly left him with unsafe caregivers, and there was violence in the home. And when the daughter was born, she tested positive for methamphetamine.

After removal, the Department placed the children with a family friend. But the Department failed to adequately inspect the living arrangements—it was unaware there was a registered sex offender living in the home and caring for the children. And the family friend neglected to properly feed the daughter, requiring hospitalization for the daughter's failure to gain weight. After the children's guardian ad litem visited the home and discovered the unsafe environment, the guardian notified the Department and asked for a hearing to again remove the children.

The children were placed with a foster family in January 2025, where they have lived—and thrived—ever since. Indeed, the children's foster mother stays home during the day, allowing her to bond with both children and attend to their "significant mental health" needs and "developmental delays." The Department case worker agreed that the foster parents are "the only two adults that these children have ever had a positive, safe, stable relationship with." So too is the foster home "the only place they probably have felt safe." And all agree the children view their foster parents as their true parents.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

Meanwhile, the Department began locating possible relatives for a familial placement shortly after the children's initial removal. *See* Iowa Code § 232.84(2) (2025) (requiring the Department to "exercise due diligence in identifying and providing notice to" certain adult relatives of the child within thirty days after removal). One family member—a great aunt in Tennessee—expressed interest. Under the Interstate Compact on the Placement of Children, the Tennessee Department of Children's Services completed and approved a home study in May.

The great aunt had no prior relationship with the children, and despite her proclaimed interest in caring for them, she had never asked to visit the children. Only after the guardian ad litem suggested in-person visits did she travel to see the children. And she only did so twice—for a two-week period in June where she had several supervised visits and for a brief period in September where she had one semi-supervised visit, one unsupervised visit, and one overnight. Otherwise, the great aunt's interactions with the children were limited to Zoom calls, which were brief given that the children were roughly twenty- and eight-months old at the time. What's more, the great aunt stated she could not accommodate a gradual transition out of their foster home or a slow ramp up in visitation to establish a relationship, as she cannot afford to travel back and forth between Tennessee and Iowa.

By the September termination hearing, the mother and father had not progressed toward reunification. The mother consented to termination. The father did not attend the hearing. And so, the fighting issue was not whether to terminate parental rights, but who should serve as the children's guardian and custodian after termination. *See* Iowa Code § 232.117(3). The Department sought guardianship and confirmed that it intended to place the children with the great aunt. The children's guardian ad litem believed the

4

children should stay with their foster parents—who wished to adopt them—and thus objected to transferring guardianship to the Department.

Relevant here, the guardian ad litem offered the testimony of a licensed social worker who specializes in infant and early childhood mental health. The specialist testified at length about the cascading harms of moving young children between homes and caregivers. The specialist also explained that children who are "drug-affected at birth" already struggle to form attachments, which can be compounded by moving them between caregivers. And once those children are settled and form bonds in a safe home, uprooting them "would have pretty serious and profound impact on their long-term mental health. They're [going to] have a hard time forming relationships with anyone else in the future." As far as forming new attachments, the specialist cautioned that any new relationships should be given time to form by progressive visits over several months, and that "there's very little meeting [of] needs that [can] happen through a computer."

The parties submitted written closing arguments after the hearing. The Department argued that under Iowa Code section 232.117(3), it was statutorily entitled to be guardian and the court had no discretion to instead select the children's foster parents. The Department also reaffirmed that it intended to place the children in the great aunt's care. The guardian ad litem countered that the court must always act in the children's best interests, and that section 232.117(3) creates preferences, not mandates. And so, the guardian ad litem asked that the court place the children in the guardianship and custody of the foster parents.

In a thorough twenty-nine-page ruling, the juvenile court terminated both parents' parental rights[2] and transferred guardianship and custody to the foster parents. The court found that the Department made only minimal efforts to foster a relationship between the children and great aunt during the months between locating her and the termination hearing. Crediting the specialist's testimony, the court also found that both children were "already at risk of differences in their very early neuro development," and moving away from the only stable home they have ever known would cause "irreparable harm."

As for section 232.117(3) and selecting the children's guardian and custodian, the court read the provision as requiring it to "consider HHS first unless HHS waives its right to be considered first." In practice, that meant it must "consider HHS first, conclude that HHS should not be appointed guardian and custodian, and then move through the list of placements in order of priority." Following that framework, the court found that transferring guardianship and custody of the children to the Department is not in the children's best interests. To that end, it found the Department's plan to abruptly uproot the children from their settled home and place them out of state in the care of an unfamiliar relative "shows reckless disregard for the children's mental health." Moving down the priority list, the only known interested adult relative is the great aunt, who the court found "should not be appointed." So the court continued on to fictive kin—the children's foster parents—who "have the closest relationship to the children at this time of anyone," "have shown skillful caregiving and decision-making," and "have

---

[2] The father's parental rights were terminated under paragraphs "b," "e," and "h" of Iowa Code section 232.116(1). The mother's rights were similarly terminated under paragraphs "a," "e," "h," and "l." Neither parent appeals.

attempted to foster a relationship between the children their mother." And the court thus appointed the foster parents as guardian and custodian.

The State now appeals. While we generally review juvenile proceedings de novo, we review questions of statutory interpretation for legal error. *See In re T.F.*, 972 N.W.2d 1, 7 (Iowa 2022).

## II.

After the juvenile court terminates parental rights to a child, it must decide who will become the child's guardian and custodian. The court's selection is governed by statute. To begin, the court must "transfer the guardianship and custody of the child to a parent of the child whose parental rights have not been terminated." Iowa Code § 232.117(3). But if both parents' rights were terminated, or "[i]f the court finds guardianship and custody with the child's parents is not in the child's best interests," then

> guardianship and custody shall be transferred for placement of the child in any of the following categories in the following order of priority:
>
> a. The department if the department had custody of the child at the time of the filing of the petition for termination of parental rights, or if custody with the department is necessary to facilitate the permanency or adoption goal, unless the department waives its priority.
>
> b. An adult relative of the child, including but not limited to adult siblings or parents of siblings.
>
> c. A fictive kin.
>
> d. A child-placing agency or other suitable private agency, facility, or institution which is licensed or otherwise authorized by law to receive and to provide care for the child.

*Id.*

The State argues this language cabins the juvenile court's discretion and mandates that, if a parent is not an option, the Department always becomes guardian and custodian of the child unless the Department waives that right. In the State's view, the statute leaves no room for any "qualitative assessment" of the Department's actions or intentions with respect to the child and instead operates as a series of mandatory placements. We disagree.

Only one placement is, at least initially, mandatory: the child's other parent. *See id.* But if the court finds that placing guardianship with the other parent would not be in the child's best interests, it may then turn to "any of the" four other options. And using "any" confirms all four placement options are before the court. *See State v. Johnson*, 744 N.W.2d 646, 649 (Iowa 2008) ("The term 'any' means 'all.'" (cleaned up)).

From there, the legislature assigned a priority level to each placement, with the Department receiving the highest priority consideration. Yet we do not believe "priority" here means an unassailable right to serve as guardian and custodian. Giving "priority" its ordinary meaning, the statute requires the court to consider the Department *first*. *See Priority*, *Black's Law Dictionary* (12th ed. 2024) ("The status of being earlier in time or higher in degree or rank; precedence."); *Priority*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997) (defining "priority" to include "legal precedence in exercise of rights over the same subject matter," "a preferential rating," and "something given or meriting attention before competing alternatives"). It does not require the court to consider the Department *exclusively*.

True, the statute also allows the Department to "waive[] its priority." Iowa Code § 232.117(3)(a). But allowing the Department to waive its place in line similarly does not create an irrebuttable right to appointment. Instead, the waiver provision allows the Department to agree that another guardian—

like a foster family or adult relative—is best for the children, relieving the court of its duty to conduct a lengthy analysis when all parties are in agreement. And if the Department does not waive its priority and an appropriate party disputes transferring guardianship and custody to the Department, then the court will consider which placement is best for the children, starting with an assessment of the Department.

The State largely hangs its interpretive hat on the word "shall." So too did our prior decision interpreting this provision. *See T.T.*, 2025 WL 862145, at *3. But while we agree "shall" is mandatory here, we must take care not to expand its mandate. Once parental rights are terminated and placement with another parent is excluded, "guardianship and custody shall be transferred for placement of the child in any of the" four options. Iowa Code § 232.117(3). So "shall" only requires the court to transfer guardianship and custody of the children to a placement within those categories and to give them priority in the specified order—it does not carry forward to direct a specific placement. Splicing the first category—the Department—into the mandate while ignoring the text that permits selection of "any of" the other three as well does not give meaning to all the words chosen by the legislature. *See Cox v. Iowa Dep't of Hum. Servs.*, 920 N.W.2d 545, 553 (Iowa 2018) ("When interpreting the meaning of the statute, we give effect to all the words in the statute unless no other construction is reasonably possible." (cleaned up)).

Examining the broader statutory context shows that the legislature knows how to write a more specific mandate. In the same 2022 amendments, the legislature replaced a provision giving the juvenile court broad discretion to select from several options for transferring legal custody of a child after disposition in a child-in-need-of-assistance proceeding with an absolute

mandate to transfer legal custody to the Department. *Compare* Iowa Code § 232.102(1) (2022), *with* 2022 Iowa Acts ch. 1098, § 45. Even in the very provision at issue here, the 2022 amendments elevated another parent whose rights were not terminated from merely one of the options for guardianship to a mandate unless the court finds that doing so is contrary to the child's best interest. *Compare* Iowa Code § 232.117(3) (2022), *with* 2022 Iowa Acts ch. 1098, § 60. That the legislature did not do the same for the Department supports an interpretation that being first in priority among four options available to juvenile court does not give the Department a unilateral right to be appointed guardian.

The State's interpretation of its priority rights also fails to fit into this broader statutory scheme. If section 232.117(3) sets forth a series of mandatory placements without regard to a child's best interest, then whenever the Department waives its priority, the juvenile court would be forced to transfer custody to the children to an adult relative, as that is the next-highest priority. But what if the children have no relationship with their adult relatives or none are safe caretakers? Under the State's view, "shall" and "priority" restrict the court from engaging in any "qualitative assessment," and thus any adult relative—say, an eighteen-year-old half-sibling still in high school—must be appointed guardian and custodian regardless of that person's fitness to care for the children. That can't be. *See In re J.T.*, No. 23-1290, 2023 WL 7015734, at *4 n.4 (Iowa Ct. App. Oct. 25, 2023) (noting "[d]espite that priority assignment [in section 232.117(3)], a child's best interests may override a familial preference").

Neither can the State's interpretation be reconciled with our interpretation of similar priority language—also added in the 2022 amendments—in Iowa Code section 232.102(1)(a). *See In re L.P.*,

No. 25-0044, 2025 WL 2237316, at *9–10 (Iowa Ct. App. Aug. 6, 2025), *further review granted* (Iowa Sept. 26, 2025); *see also* 2022 Iowa Acts ch. 1098, § 45.[3] There, the statute also provides an "order of priority"—but for five placement categories for the child while in the Department's custody during a pending child-in-need-of-assistance case. Iowa Code § 232.102(1)(a) (2025). The juvenile court has authority to select the category of placement. *Id.* § 232.102(1)(b). Yet if the court selects one of the categories other than the highest priority—"[a]n adult relative"—the statute requires the court to make "a specific finding that placement with an adult relative is not in the child's best interests" and provide its "reasons" for that finding. *Id.* § 232.102(1)(c). And we held that the statute permits the juvenile court to consider the best interest of the child—the same as throughout chapter 232—in selecting the appropriate category. *See L.P.*, 2025 WL 2237316, at *9–10. In doing so, we rejected the State's argument—much like its argument here—"that if the department identifies a suitable adult relative for placement, game over." *Id.* at *8. We fail to see how the nearly identical usage of an "order of priority" in the juvenile court's selection authority could restrict the court from considering the child's best interest here in section 232.117(3) but not there in 232.102(1). And we know that the State's more restrictive interpretation of priority could not apply in both contexts, because section 232.102(1)(c) makes clear that the court may consider the child's best interest in deciding among the prioritized categories.

---

[3] Although *In re L.P.*, involved section 232.102(1)(a), other provisions governing placement of children removed from their homes at other phases of child-in-need-of-assistance proceedings have similar language. *See* Iowa Code § 232.78(8) (placement after temporary removal by an ex parte order); *id.* § 232.95(7) (placement after temporary-removal hearing); *id.* § 232.96(11) (placement after adjudicatory hearing).

What's more, we must avoid interpreting chapter 232 in a manner that "disregards the paramount concern that guides all matters arising out of CINA and termination of parental rights proceedings: the best interests of the child." *Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.*, 27 N.W.3d 76, 83–84 (Iowa 2025); *see also* Iowa Code § 232.1. The State's reading does just that—it seeks to bind the juvenile court to appoint the Department even when the juvenile court finds that the Department's announced plans for the child are contrary to the child's best interest. Without any clear textual basis for such a deviation from that overriding guidance, we must interpret section 232.117(3) consistent with the juvenile court's authority to make all decisions in the child's best interest.[4] Indeed, there is even less textual basis for the State's preferred interpretation of departmental authority here than in the most recent case where our supreme court applied that guidance to hold that the juvenile court had implicit authority to prohibit the Department from "moving a child until after a hearing on the placement decision." *Iowa Dep't of Health & Hum. Servs.*, 27 N.W.3d at 84.[5]

---

[4] This interpretation is also consistent with precedents interpreting the pre-2022 version of section 232.117(3), which held that when selecting among the options for guardian, "[t]he paramount concern is the best interest of the children." *In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992). Of course, those precedents also noted that "the statute gives no preference to any person or entity." *In re N.V.*, 877 N.W.2d 146, 150 (Iowa Ct. App. 2016) (cleaned up). And that second interpretation has been abrogated by the 2022 addition of statutory text setting an "order of priority." But we see nothing in the amendment that abrogates the interpretation that a child's best interest is paramount.

[5] And like that case, the facts here show the consequences of the State's position: letting young children be abruptly ripped from their stable and loving home and placed with an out-of-state relative who is little more than a stranger. *Cf. Iowa Dep't of Health & Hum. Servs.*, 27 N.W.3d at 84 (expressing concern about the Department's "sudden urgency" to move a child to be with "siblings" with whom the child "had never lived" given the delay in finding a placement and the lack of an adequate transition plan).

In sum, section 232.117(3)'s placement order of priority does not eliminate the juvenile court's steadfast duty to act in a child's best interest when selecting a guardian. Our court's contrary interpretation in *T.T.* is no longer correct. *See T.T.*, 2025 WL 862145, at *3. The statute's order of priority must still guide the juvenile court's selection, and we expect it will be the rare case where a party can show that the Department's appointment as guardian would not be in the child's best interest. But here, the juvenile court did not disregard the Department's priority—it heard nearly two days of testimony and conducted an extensive analysis into whether the Department should become the children's guardian given the Department's definite placement plans. After finding that appointing the Department would cause irreparable harm to the children, it moved down the priority list to select a guardian that would be in the children's best interest. Because that consideration of the children's best interests is consistent with section 232.117(3), and the State makes no effort on appeal to dispute the juvenile court's factual findings, we affirm.

**AFFIRMED.**

Tabor, C.J., and Greer, Badding, Chicchelly, Buller, and Sandy, JJ., concur; Schumacher, J., dissents with Ahlers, J., joining.

**SCHUMACHER, Judge** (dissenting).

I respectfully dissent from the majority opinion, as Iowa Code section 232.117(3) (2025) requires the district court to place custody and guardianship with the Iowa Department of Health and Human Services following termination, absent waiver by the Department. As highlighted by the majority, the relevant statute provides the following directives for the court.

The court must "transfer the guardianship and custody of the child to a parent of the child whose parental rights have not been terminated." Iowa Code § 232.117(3). But if both parents' rights are terminated, or "[i]f the court finds guardianship and custody with the child's parents is not in the child's best interests," then

> guardianship and custody shall be transferred for placement of the child in any of the following categories in the following order of priority:
>
> > a. The department if the department had custody of the child at the time of the filing of the petition for termination of parental rights, or if custody with the department is necessary to facilitate the permanency or adoption goal, unless the department waives its priority.
>
> > b. An adult relative of the child, including but not limited to adult siblings or parents of siblings.
>
> > c. A fictive kin.
>
> > d. A child-placing agency or other suitable private agency, facility, or institution which is licensed or otherwise authorized by law to receive and to provide care for the child.

*Id.*

"Whenever the word 'shall' is used in a statute, it imposes a duty and precludes the exercise of discretion." *State v. Flynn*, 13 N.W.3d 843, 847

(Iowa 2024) (cleaned up). Here, the words "shall transfer," coupled with "in the following order of priority," direct the court's actions.

The majority opinion highlights that the State's interpretation cannot be reconciled with our interpretation of similar priority language—also added in the 2022 amendments—in Iowa Code section 232.102(1)(a). *See* 2022 Iowa Acts ch. 1098, § 45; *In re L.P.*, No. 25-0044, 2025 WL 2237316, at *9–10 (Iowa Ct. App. Aug. 6, 2025), *further review granted* (Iowa Sept. 26, 2025). There, the statute also provides an "order of priority"—but for placement categories for the child while in the Department's custody during a pending child-in-need-of-assistance case. Iowa Code § 232.102(1)(a). The majority in *L.P.* determined that the named placement met the definition of fictive kin and affirmed their intervention into the proceedings when the child was a little over two months old. 2025 WL 2237316, at *5–6. For reasons similar to my disagreement with the majority's determination in *L.P.*, I also dissent here.

> The foster care system is designed to provide temporary, not permanent, homes for children. This is to facilitate the goals of reunification with the parents or placement in a relative's home. We certainly recognize the bond that is developed between a foster parent and child. . . . However, if every foster parent who formed a bond with a child were given enforceable rights to the children, it would upset the goals of the system.

*In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007).

Here, the Department expressed an intent to place these two young children in the care of an out-of-state relative who had an approved home study under the Interstate Compact on Placement for Children. Following termination of the parents' parental rights, the court appointed the foster parents as the guardian and custodian, identifying them as fictive kin for

purposes of placement priority under section 232.117(3). There is no evidence that the foster parents had any type of relationship with these children prior to removal from their parents. Foster parents are not delineated in the guardianship statute. As a practical matter, the interpretation of foster parents as fictive kin for purposes of 232.117(3) places most every foster parent in a position to challenge guardianship following termination. Here, the current foster parents are reported to have provided exceptional care. But prioritizing their interest over a relative runs afoul of the purposes of a chapter 232 action, which involves an analysis decidedly different than that of other custodial determinations, such as a chapter 598 action.

The district court relied on the testimony of a licensed independent social worker and infant and child mental-health therapist. The witness was called by the guardian ad litem and testified about the harms of moving children between caregivers. This witness had never met the children, the prospective relative placement, the case manager, or the foster parents. And tragically, the unfortunate truth is that the potential harm highlighted by this witness is present in nearly all cases involving the transfer of children from parents to at least one foster home and then to a prospective relative or other permanent home under the jurisdiction of our courts.

Even putting aside the issue of whether these foster parents can qualify as fictive kin, the Department must be appointed based on clear language of the statute. *See Flynn*, 13 N.W.3d at 846 (affirming the district court's decision that allowing discretion to officers where the statute is clear and unambiguous "would effectively eviscerate the statute"); *see also State v. Iowa Dist. Ct.*, 989 N.W.2d 652, 656 (Iowa 2023) (discussing the difference between the legislature's use of "shall" and "may" and holding the former

imposes a requirement and the latter provides discretion). There is no dispute that the Department had custody of these children at the time the termination petition was filed, and the Department did not waive its priority to be appointed as the guardian following termination.

Section 232.117(3) sets the priority order the district court must follow in determining the guardian following a termination of parental rights. Nothing suggests this order may be disrupted before the guardian is appointed. This case is a fight over placement. But if there is a disagreement as to how the Department is fulfilling its obligation as to placement, the statute provides a procedural mechanism to resolve that disagreement. That mechanism is not to ignore the order for appointment of the guardian set forth by statute; it is to seek removal of the guardian. *See* Iowa Code § 232.118.[6] Specifically, two elements must be proven to warrant removal: (1) the guardian's actions must be unreasonable or irresponsible in finding a suitable adoptive home; and (2) the guardian's actions must be contrary to the children's best interests. *Id*.; *see also E.G.*, 745 N.W.2d at 744. Even when a guardian's actions are unreasonable, we will not remove the guardian unless

---

[6] Section 232.118 provides:

(1) Upon application of an interested party or upon the court's own motion, the court having jurisdiction of the child may, after notice to the parties and a hearing, remove a court-appointed guardian and appoint a guardian in accordance with the provisions of section 232.117, subsection 3.

(a) The moving party or a party opposed to the actions of the guardian has the burden to establish that the court-appointed guardian failed to act in the child's best interests by unreasonably or irresponsibly failing to discharge the guardian's duties in finding a suitable adoptive home for the child.

doing so is in the children's best interests. *In re K.D.*, 975 N.W.2d 310, 320 (Iowa 2022). "[T]he court must focus on the process [the Department] used and the actions it took in reaching the placement decision and then determine whether those were unreasonable (or irresponsibly undertaken)—all with the best interests of the child in mind." *In re J.L.*, 973 N.W.2d 895, 908 (Iowa Ct. App. 2022). The movants for the removal of the Department as guardian have the burden to prove the Department acted unreasonably by a preponderance of the evidence. *Id.*; *K.D.*, 975 N.W.2d at 320.

But all of this occurs procedurally after the appointment of the guardian pursuant to the priorities listed in section 232.117(3). And as we have stated before, under the governing statutes, the Department "must be given the chance to perform its guardianship duties in the child's best interest before the court can remove it for failing to do so." *In re T.T.*, No. 25-0072, 2025 WL 862145, at *3 (Iowa Ct. App. Mar. 19, 2025).

Lastly, I would note that the majority opinion also cites a recent supreme court opinion, but the issue decided there involved the district court's right to stay a placement named by the Department who was serving as the guardian and custodian for the child. *See Iowa Dep't of Health & Hum. Servs. v. Iowa Dist. Ct.*, 27 N.W.3d 76, 83–84 (Iowa 2025). So, I do not find such instructive on the issue in the instant appeal.

For the reasons enumerated in this dissent, I would reverse and remand with instructions to appoint the Department as the guardian and custodian of J.B. and R.R.

Ahlers, J., joins this dissent.